# CASES DETERMINED

IN THE

## St. Louis and the Kansas City

# COURTS OF APPEALS

OCTOBER TERM, 1887.

GRANVILLE W. DAVIS, Defendant in Error, v. CARLTON
W. SPICER, Plaintiff in Error.

Kansas City Court of Appeals, October 8, 1887.

1. ACTION FOR MALPRACTICE — TENDENCY OF EVIDENCE — CASE
ADJUDGED.—Where in an action for malpractice, the evidence on
the part of the plaintiff tended to prove that the broken limb was
not set at all by the defendant; and that plaintiff's broken leg was
short by three inches, and that such condition was permanent,
although the evidence also showed that in a case like the plaintiff's
there is always shortening of the broken leg (the average shorten-
ing under proper treatment was variously stated to be from three-
fourths of an inch to one and one-half inches), and the defendant's
evidence tended to show that he properly set the broken leg and
properly treated it; and that the plaintiff had been guilty of care-
lessness and negligence, and of a failure to comply with the defend-
ant's directions (although the plaintiff's evidence tended to prove
the contrary). *Held*, that this court will not weigh the evidence,
and cannot say, after an examination of all the evidence, that the
verdict, in favor of the plaintiff, was the result of passion and
prejudice.

2. —— PRACTICE—INSTRUCTIONS—CONTRIBUTORY NEGLIGENCE.—An
instruction given in this case required the jury to find that the
plaintiff's negligence directly contributed to his injury, before they

( 279 )

could, on that ground, find for the defendant. *Proximately* is the technical and more accurate word, and is used by text-writers and in the opinions of courts generally, where the effect of the plaintiff's contributory negligence is scientifically discussed, but in this connection the two words are synonymous.

Error to Andrew Circuit Court, Hon. H. S. Kelley, Judge.

*Affirmed.*

*Motion for rehearing denied.*

The case is stated in the opinion of the court.

James F. Mister, for the plaintiff in error.

I. Davis, a farmer about sixty years old, was thrown from his horse on the sixteenth or seventeenth day of August, 1881, by which his right leg was broken between the knee and the hip joint. The fracture was very oblique; he was utterly disabled by the fall, and had to be hauled to the house in a sled, and was placed in bed, and directed that Doctor Spicer be sent for to treat his leg, which was done. Spicer came, and after examining the leg and pronouncing it broken, used means in setting and treating it, such as are recognized by the medical profession as among the best and most efficient in use. After visiting Davis three times, up to the thirtieth of August, he told him that, in his opinion, it was not necessary to visit him regularly, but if anything went wrong he should send for him and let him know, which Davis promised to do. On the ninth of September, Davis sent for him because of a pain in his side, which he treated and relieved, and was not sent for afterwards. Davis kept his bed for eighty or ninety days, and on getting up, for the first time, found that the broken leg was two or three inches shorter than the other; but he did not send for Spicer, who only saw it some months later, while calling at the house of Davis as a friend. Not long afterwards this suit was brought, on

the ground that the treatment was unskilful and negligent, so that Davis was permanently injured by it. The evidence at the trial was uniform that the methods of treatment were good, and in accordance with the most approved authorities, except, possibly, that the visits should have been more frequent, in the earlier stages of the case, but even this was supplemented with the statement that when it was agreed between the doctor and patient (as it was shown to be agreed in this case), that the doctor should be sent for and notified, that such an agreement is usual and customary, and entitled to be relied on, and that the duty and obligation of the patient is imperative under it. There is also very considerable evidence in the record, not only that Davis did not attempt to fulfill his solemn obligation, but that he disobeyed, disregarded, and ignored the instructions and directions given by Spicer; especially in sitting up in bed, against specific orders to the contrary; and in removing the weights when their services were most needed, because of a little transient pain or inconvenience, all without sending for or even communicating with Spicer. It further appears, not only from the evidence of physicians testifying at the trial as experts, but from such eminent authority as Dr. Hamilton (very recently deceased), that the average shortening in a fracture of this character is about one and one-half inches; that the shortening might have resulted no better under any treatment or cure; and it appears that Hamilton's tables run from a perfect cure to three inches shortening, and that there is more or less absorption of the ends of the bones, especially in case of an old man. The minor differences among the medical experts at the trial are of no importance. Of course, they would each have done the matter a little differently, and would have "liked" to do some other things, or else the phrase of the "doctors differing" would go out of use; but it is somewhat remarkable that in every case the doctors here said that Spicer's reputation was good as a surgeon, and

that his treatment in this case was in accordance with
the most approved and scientific methods. Of course,
they wanted a "hard" bed and "fixed" dressing, etc.,
etc., but neither of these can be extemporized in the
backwoods of Andrew county, during a rain, and so
Davis had to be treated on such bed as he had. Besides,
Dr. Hamilton, the greatest authority on surgery of his
age, says a hard bed is not necessary, and he condemns
a fixed dressing. Hamilton on Fractures, etc., 474, 64,
and 483. Considering the fact that Davis was about
sixty years old at the time of being thrown from his
horse; that he was a large man, weighing nearly two
hundred pounds; and had been afflicted with rheuma-
tism for fifteen years, during which time he had more
than one attack of extreme severity; it is more than
probable that the result obtained in this case was the
best possible, under the circumstances, by any known
method or means of treatment. [ "Note 1. The more
difficult forms of fracture   *   *   *   are those called in
the books compound and oblique simple fractures.
*   *   *   In almost all oblique fractures there is, neces-
sarily, a shortening of the limb, under the best of treat-
ment." Elwell on Malpractice, etc., 76–85; Hamilton on
Fract., etc. [5 Ed.] 27, 38, 418; Sir Artley Cooper's Dis.
& Fract. 319; Ashurst's Surg. 270, 271. "Of one hun-
dred and five cases of fracture of the *femur* (as in this
case), only about ten are reported as resulting in perfect
cures.   *   *   *   Shortening is almost universal in these
cases of fracture of the *femur*.   *   *   *   And in the
case of an oblique fracture of the shaft of the *femur*
occurring in an adult, whose muscles are not paralyzed,
but offer the ordinary resistance to extension and counter
extension, and where the ends of the broken bone have
once been completely displaced, no means have yet been
devised by which an overlapping and consequent short-
ening of the bone can be prevented." Elwell on Mal-
practice, etc., 97, quoting report of Professor Frank H.
Hamilton; Hamilton on Fract., etc., 432–441]. In any

event there is an utter failure of evidence to show unskil-
fulness or negligence on the part of Spicer, while there
is much evidence of bad faith, disregard of instructions,
and neglect of the use of ordinary means for his own
care and safety, on the part of Davis.

II.   Such being the fair result of the evidence, as
literally transcribed from the record without abridg-
ment, it remains to be seen what liability Spicer is under
to Davis, if any, and in reaching a satisfactory answer
to compare it with the declarations of law given in this
case.   (1) The obligation of Spicer in this case, under
the law, was, that he should use due care and diligence,
and that he had and would exercise the skill and knowl-
edge ordinarily possessed by members of his profession.
2 Parsons on Cont. [5 Ed.] 54 ; 2 Addison on Cont. [Mor-
gan's Ed.] sec. 894 ; *Smothers v. Hanks*, 34 Ia. 286 ;
*Branner v. Stormont*, 9 Kas. 51 ; *McCandless v.
McWha*, 22 Pa. St. 261 ; *Craig v. Chambers*, 17 Ohio
St. 259 ; *Hitchcock v. Burgett*, 38 Mich. 501 ; *Mayo v.
Wright*, 5 West. Rep. 595.   (2) But to render him liable
for negligence, or want of due care and skill, there must
have been a want of ordinary care and skill, and to such
a degree as to have led to a bad result.   2 Addison on
Cont. 563 ; *Smothers v. Hanks*, 34 Ia. 286 ; *Chamberlain
v. Morgan*, 68 Pa. St. 168 ; *Teft v. Wilcox*, 6 Kan. 46 ;
*West v. Martin*, 31 Mo. 375 ; *Hitchcock v. Burgett*, 38
Mich. 501 ; *Piles v. Hughes*, 10 Ia. 579.   But the mere
fact of a bad result does not create a liability, nor raise
a presumption of want of care and skill.   *Teft v. Wil-
cox, supra ; Haire v. Reese*, 7 Phila. 138.

III.   (1)   But if the patient's own negligence con-
tributed to the injury or the damage, he cannot recover
against the physician.   *Hubbard v. Thompson*, 109
Mass. 286 ; *Scudder v. Crossan*, 43 Ind. 343 ; *Callahan
v. Waine*, 40 Mo. 131 ; *O'Hara v. Wells*, 14 Neb. 403 ;
*Mallen v. Boynton*, 132 Mass. 443 ; *Small v. Howard*,
128 Mass. 131 ; *Potter v. Warner*, 91 Pa. St. 362 ; *Glisel-
man v. Scott*, 25 Ohio St. 86 ; *Karle v. Railroad*, 55 Mo.

484; *Morrissey v. Ferry Co.*, 43 Mo. 380; *Schaabs v. Wheel Co.*, 56 Mo. 176; *Jones v. Angell,* 95 Ind. 376; *Railroad v. Shanks*, 94 Ind. 598; *Railroad v. Hetherington*, 83 Mo. 510; *Levy v. Canal Co.*, 34 La. Ann. 180; *Doggett v. Railroad*, 78 N. C. 305; *Drake v. Mount*, 33 N. J. Law [4 Vr.] 441; *Carpenter v. Blake*, 60 Barb. [N. Y.] 488; Cooley on Torts, 679; *McCandless v. McWha*, 22 Pa. St. 268; *Railroad v. Bailey*, 11 Ohio St. 333; *Lockhart v. Lichtenthalen*, 46 Pa. St. 151; *Brown v. Maxwell*, 6 Hill [N. Y.] 592; *Heil v. Glanding*, 42 Penn. 493; *Haley v. Earle*, 30 N. Y. 298; *Berge v. Gardiner*, 19 Conn. 507; *Eakin v. Brown*, 1 E. D. Smith [N. Y.] 36. In this case, the plaintiff persistently disobeyed and disregarded the instructions. He remained in bed long after he had been sent word to get up. It was his duty to have tried to do what he was instructed to do, and if he had tried and failed, then sent the doctor word, as he contracted to do, so the doctor could see what was wrong, and have the opportunity of changing the treatment. Gross on Surgery, 922–3. Again, it was his duty to have notified Spicer when the splints split; so, also, when the adhesive straps got loose, as this was a vital part in the treatment, until the bone is solid and a good result got. Again, he was guilty of gross carelessness, in trying the strength of the union in the broken leg, by taking it in his hands and swinging it hither and thither, with a smoothing iron and two horse-shoes tied to his foot. This would be, ordinarily, sufficient to re-fracture an average union of such a fracture, at this time, in a man of his age and condition. Nor should he have laid the weights on the bed for a moment, as he told Dr. Dunn he did. If the weights were too heavy, so as to cause him pain, he should have sent for Spicer, as he contracted to do; besides the weights would have extended the leg, if set short. Hamilton, 469. Again, it was the duty of Davis to send for Spicer when he got up and found his leg was too short, as it was then capable of being easily rem-

edied. Gross on Surgery, 943. (2) The doctrine of contributory negligence, as stated by Shearman & Redfield on Negligence (chap. 3, sect. 25), is adopted by the Supreme Court of this state, in *Karle v. Railroad* (*supra*), as follows : " One who is injured by the mere negligence of another cannot recover, at law or in equity, any compensation for his injury. If he, by his own, or his agent's, ordinary negligence, or wilful wrong, proximately contributed to produce the injury of which he complains, so that, but for his concurring and coöperating fault, the injury would not have happened to him, except where the more proximate cause of the injury is the omission of the other party, after becoming aware of the danger to which the former party is exposed, to use a proper degree of care to avoid injuring him." And this is said to be "substantially the doctrine of this court, in *Morrissey v. Ferry Co.* (*supra*)." And the same court, in *Schaabs v. Wheel Co.* (*supra*), says : "No one can recover for an injury of which his own negligence, in part or in whole, was the immediate and proximate cause." In an action for malpractice, instructions that if plaintiff was told by his surgeon to visit him again as soon as he felt any pain, and, though feeling pain for a week, neglected to call, he was guilty of contributory negligence, preventing recovery, *held*, correct. *Jones v. Angell, supra.* Where wilfulness is not charged in an action for negligence, even the slightest contributory negligence defeats recovery. *Railroad v. Shanks, supra ; Railroad v. Hetherington, supra.* Where an injury would not have happened, except for the culpable negligence of the party injured, concurring with that of the other party, no action can be maintained. *Levy v. Canal Co.; supra; Doggett v. Railroad, supra ; Drake v. Mount,* 33 N. J. Law [4 Vroom] 147 ; *Griggs v. Fleckenstein,* 14 Minn. 81 ; *McCandless v. Mc Wha,* 22 Pa. St. 261 ; *Carpenter v. Blake, supra.* It is the duty of the patient to coöperate with his professional adviser, and to conform to the necessary and proper pre-

scription, and, if he will not, or under the pressure of pain cannot, his neglect is his own wrong or misfortune, for which he has no right to hold his surgeon responsible. *McCandless v. McWha, supra ;* Shearman & Redfield on Neg. [3 Ed.] sect. 643 ; Elwell on Malprac., 32. (3) The plaintiff's fault must, also, proximately contribute to his injury, in order to constitute any ground of defence ; but it is not necessary that it should directly contribute to such injury. "Proximate" does not mean next, or near, in the order of time, but near in the order of causation. Shearman & Redfield on Neg. [3 Ed.] sect. 33 ; *Button v. Railroad,* 18 N. Y. 248. The question, whether a party has been negligent in a particular case, is one of mingled law and fact. It includes, indeed, two questions : (*a*) Whether a particular act has been performed or omitted, and (*b*) whether the performance or omission of this act was a breach of a legal duty. The first of these is a pure question of fact ; the second a pure question of law. *Tarwater v. Railroad,* 42 Mo. 193 ; Shearman & Redfield on Neg. [3 Ed.] sect. 11. (4) Negligence on the part of the plaintiff is a matter of defence, to be proved affirmatively by the defendant, though it might, of course, be inferred from the circumstances proved by the plaintiff. But if it appears certain that the plaintiff neglected some duty, and probable that if he had not neglected it he would not have suffered the injury, the question of contributory negligence cannot be left to the jury, but must be decided adversely to the plaintiff. Shearman & Redfield on Neg. [3 Ed.] sects. 44, 45 ; *Sprong v. Railroad,* 60 Barb. [N. Y.] 30. The period of greatest danger is within the first week (the treatment here was for twenty-four days). 1 Gross on Surgery, 922, 493, *et seq.*

IV. In no event can defendant be held liable under the pleadings, as undertaking to cure ; but only to use ordinary skill and care in the treatment of the plaintiff's fractured thigh bone. "On a complaint for malpractice, alleging that defendant was employed to set and reduce

a fracture, * * * and to attend to and cure and heal the same for a certain fee; and said defendant undertook and entered upon such retainer and employment. *Held*, that this language implied no more than the duty to exercise ordinary care, and was not a contract to cure." *Hoopingarner v. Levy*, 77 Ind. 455. A physician is not a warrantor or insurer of a cure, and is not to be tried by the result of his remedies. *McCandless v. McWha*, 22 Pa. St. 261. And the state of health of the patient may have much weight in determining whether ordinary diligence and care have been used by the attending physician. Shearm. & Redf. on Negl. [3 Ed.] sect. 438. So if the defendant in this case, in his treatment of the plaintiff, as a surgeon, exercised his best judgment and skill, it tends to rebut the charge of negligence. *Fisher v. Nicholls*, 2 Ill. App. 484; *Branner v. Stormont*, 8 Kas. 51; *West v. Martin*, 31 Mo. 375; *Patton v. Wiggins*, 51 Me. 594; *Tefft v. Wilcox*, 6 Kas. 46; *Leighton v. Sargent*, 27 N. H. [7 Foster] 460; *Simonds v. Henry*, 39 Me. 155; Hamilton on Fractures, 435, 441; *Mayo v. Wright*, 5 West. Rep. 595.

V. The verdict is against the evidence, and was for the plaintiff, when it should have been for the defendant. It is manifestly the result of passion and prejudice. In such case it must be set aside. *Kennedy v. Railroad*, 36 Mo. 351; *State ex rel. v. Adams*, 84 Mo. 310; *Hipsley v. Railroad*, 4 West. Rep. 48; 88 Mo. 348; Elwell on Malpractice, 74; *Shockley v. Fischer*, 21 Mo. App. 551; *Hinds v. City of Marshall*, 22 Mo. App. 216.

VI. The court erred in giving and refusing instructions. The law was misunderstood, and the jury misdirected by the court, in giving such of the instructions asked for by the plaintiff as declared that the negligence of plaintiff must have contributed directly to the result, in order to defeat plaintiff's recovery, and in refusing (by the act of modifying them) the instructions asked by defendant, especially that numbered four, which de-

clared that if plaintiff's own negligence contributed to the injury or damage, he cannot recover ; and which said instruction, numbered four, as asked by defendant, presented, in one view, with great precision, clearness, and accuracy, the issues involved in this controversy, in all their substance and essence. And the action of the court, as to these instructions alone, constitutes gross error, and are absolute ground for reversal. This appears unmistakably, from the authorities heretofore cited, and they are again referred to, in confirmation of this statement. Besides, the seventh and eighth instructions, given for plaintiff, devolve it on the jury to determine what could not be intelligently or safely determined by a commission of the most eminent of living surgeons, namely: That the fracture could have been treated so as to "save plaintiff from permanent injury." This could not be possibly known satisfactorily ; the age and "condition in life" (*Hinds v. City of Marshall*, 22 Mo. App. 216), of the plaintiff may have been such that no treatment could have produced a different or better result. In the absence of evidence of unskilfulness and negligence (neither of which are shown here, certainly not, in view of the agreement to notify in case of "anything going wrong"), the result has no place in this controversy. Reputable physicians and surgeons do not undertake to guarantee cures; all they promise is to use all the means available, according to the exigency of the case. The human organization is so "fearfully and wonderfully made" that the masters in skill, when the complications are serious, acknowledge a certain sense of awe in the work they undertake, and the difficulties are multiplied when the machinery is worn and battered by the jars and revolutions of the wear and tear of sixty years. Elwell on Malpractice, 38, 43, 44; *Mayo v. Wright*, 5 West. Rep. (Sup. Ct. Mich.) 595. Again, the elements contained in the instruction numbered eight, as to damages, are none of them proper to be considered in a case like this. The

skill of defendant, as a surgeon, is not questioned (and the fact is demonstrated by the evidence of all the physicians), neither is his good faith attacked; the substance of the charge is that he did not exercise the skill he had, nor exercise the carefulness that was due from him. The instruction seeks to treat him as a criminal, and the plaintiff as a martyr. Except for these inadvertencies of the trial judge, in which he failed to exercise his usual "skill and diligence," the instructions are about as fair as could be expected when such a mountain of words are used on either side in so simple an issue. When the court staggered under such a weight as was imposed upon it by the skill of distinguished counsel, it is not to be wondered at that the jury stumbled and fell down.

DAVID REA and CHARLES F. BOOHER, for defendant in error.

I. Plaintiff in error assigns for error the following: (1) The verdict is contrary to the law and the evidence. (2) The verdict should have been for defendant, instead of plaintiff. (3) The court erred in giving instructions four, seven, eight, and nine, for plaintiff. (4) The court erred in refusing instructions four and six, for defendant.

II. We think there is nothing in the first point. The law is too well settled in this state to require citations of authority, that this court will not weigh the evidence in cases at law to see whether the verdict of the jury is against the evidence. Such is clearly the rule where there was evidence on which the jury might base their verdict—and we regard this as such a case.

III. As to the second assigned error, we say that if the first, third, and fourth assigned errors are not well taken, then there is nothing in the second.

IV. We will consider the third and fourth assigned errors together. There was no misdirection by the court

in giving the fourth instruction on the part of the plaintiff and defendant in error. The contributory negligence, on the part of plaintiff, that would preclude a recovery, must directly contribute to the injury. These instructions are sustained by the following authorities: *Callahan v. Warne et al.*, 40 Mo. 131; *Moinsy v. Wiggins Ferry Co.*, 43 Mo. 380; *Kennayde v. Railroad*, 45 Mo. 255; *Walsh v. Transportation Co.*, 52 Mo. 434; *Karle v. Railroad*, 55 Mo. 476; *Schaabs v. Wheel Co.*, 56 Mo. 173; *Harlan v. Railroad*, 65 Mo. 22; *Buesching v. Gaslight Co.*, 73 Mo. 219; *Strauss v. Railroad*, 75 Mo. 185; *Sweigert v. Railroad*, 75 Mo. 475; *Geiseman v. Scott*, 25 Ohio St. 86; 2 Pickering, 621; 109 Mass. 286; Cooley on Torts, 679; 1 Addison on Torts, [Am. Ed.] sect. 34, p. 38, and note 1, p. 42, and sect. 568, p. 610, and note 1, p. 611.

V. There was no error committed by the trial court in giving the seventh, eighth and ninth instructions, on the part of the plaintiff below. It cannot be maintained that these instructions, or either one of them, make appellant an insurer of his work. These instructions only made appellant liable in case he failed to exercise reasonable and ordinary care and attention or ordinary skill, and injury thereby resulted to plaintiff. That is the law in such cases. 7 Foster's [N. H.] 460; *Loudon v. Humphrey*, 7 Conn. 209; *Gallagher v. Thompson*, Wrights' Ohio Reports, 466; *McCandless v. McWha*, 22 Pa. St. 261; *McNevens v. Lowe*, 40 Ill. 209; *Geiselman v. Scott*, 25 Ohio St. 86; 2 Pick. 621; 109 Mass. 286; *West v. Martin*, 31 Mo. 375; *Craig v. Chambers*, 17 Ohio St. 253. The eighth instruction given for plaintiff below as to future damages, is the law under the evidence in this case. *Wintern v. Railroad*, 39 Mo. 468; *Horner, Adm'r, v. Nicholson*, 56 Mo. 220; *Sweigert v. Railroad*, 75 Mo. 475; *Clotworthy v. Railroad*, 80 Mo. 220; *Whalen v. Railroad*, 60 Mo. 323; Sedgewick on Measure of Damages [6 Ed.] 93, 94, and note 1, p. 94, and note 2, pp. 699, 700; Pierce on Railroads, 301, 302;

2 Redfield on Law of Railroads [3 Ed.] p. 220, sect. 183 ; *Curtis v. Railroad*, 18 N. Y. 534.

VI. The pleadings in this case, as shown in the printed record of the plaintiff in error, show that the plaintiff charged the defendant with negligence and want of skill in and about the reduction and treatment of defendant's broken thigh bone. The plaintiff nowhere in his petition alleges that he was without fault or negligence. The answer of defendant denies the negligence and want of skill on his part, but does not charge that plaintiff was guilty of any negligence that contributed in any way to the injury complained of by plaintiff. Defendant does, in his answer, charge that "the plaintiff, in treating and nursing his said broken thigh bone, disregarded and disobeyed the instructions given by the defendant in and about the same," but does not charge that such failure to obey the instructions contributed in any way to said injury. Under the pleadings, it is questionable whether it was proper to give any instructions on contributory negligence on part of plaintiff. *Northrup et al. v. Insurance Co.*, 47 Mo. 435 ; *Harrison v. Railroad*, 47 Mo. 364.

VII. Was there evidence in this case tending to prove that Spicer, in the treatment of Davis' limb, failed to exercise ordinary skill or ordinary, reasonable diligence, care, and attention in and about said treatment? We think the evidence, taken as a whole, not only tends to prove, but clearly does prove, that Spicer did not exercise ordinary skill, nor ordinary reasonable care and attention in and about the treatment of Davis' limb. The evidence of Davis, the defendant, and also of John Rankin, Isaac Downing, William Hurst, James Rankin, and George Elliott, all of whom were present and assisted Spicer more or less in setting the broken limb, conclusively establishes the fact that Spicer did not measure the limb to see if it was as long as the other limb. They say that Spicer told John Rankin to sight across and see when the injured limb was as long as the

other, and that Rankin did so, and told Spicer that it lacked about three-quarters of an inch of being as long as the well leg, and Spicer said that would do, and left the limb in that condition. It is true that Spicer, in his testimony, says that he measured the limb. We have these six witnesses who were present, and some of them holding the limb, stating that he did not measure the limb, or at least they did not see him do so, and they believe if he had done so they would have seen him. Was the jury bound to believe Spicer, in this conflict of evidence, rather than six respectable gentlemen? We think not. We think Spicer did not set the broken limb at all. These witnesses say that Rankin told Spicer that it was three-quarters of an inch short, and he said that would do. All the medical experts that testified in the case, namely, Drs. Geiger, Wakefield, Huffman, Howard, and Ferguson, who testified on the part of Davis, and Drs. Bryant and Goslin, who testified on the part of Spicer, say that the only way to have ascertained the length of the limb was to measure it, and that if the broken limb was three-quarters of an inch shorter than the other leg, the broken thigh was not set; that the broken bones were not in proper apposition. If the limb was short, we know without the evidence of experts, that the broken bones were not in apposition, and the limb was not set. All the law required of Spicer was the exercise of ordinary skill. Ordinary skill and common sense would tell any one that when the limb was three-quarters of an inch short, the broken bones were not properly set. Spicer did not exercise ordinary skill and care in attempting to set said broken limb, and in attempting to arrive at the length of the limb by having John Rankin sight, rather than measure the same. The evidence of all the witnesses showed that Spicer treated Davis on a soft bed, and all the physicians testified that a hard bed was the best. The evidence shows Davis to have been a large, heavy man, at the time, weighing

185 to 190 pounds. Such a man placed on a soft bed with a broken thigh, and without fixed dressing, but with weights for extension, by his attending surgeon, and there left, as the evidence in the case shows, was not the exercise of ordinary skill and reasonable care on the part of the surgeon, but was wilful and wanton cruelty. Again the evidence shows that Spicer used small bags of bran placed on the sides of the leg. The evidence of all the experts is that salt or sand is used and recommended, and they never heard of bran being used or recommended before. The method of treatment in this case is shown to be "Buck's method," and all the expert testimony in this case shows that "Buck's method" of the treatment of fractures requires more care and attention than almost any other method, and yet we find that Spicer set, or rather pretended to set, this limb on the night of the sixteenth of August, and that he did not visit Davis again until the nineteenth, three days afterwards, and then on the thirtieth of the same month, and then on the ninth of September, when he was sent for. All the physicians who testify in the case say that the surgeon ought to see his patient oftener, at least until the limb is put in fixed dressing. Most of them say the surgeon ought to see his patient every day for several days, as the weights have to be adjusted from time to time. The jury might well find that such conduct on the part of Spicer, was not the exercise of ordinary skill, and reasonable care and attention. It was not the exercise of such care and attention as all the physicians who testified in the case say the case say they would be willing to risk giving in a similar case. Spicer, to excuse his inattention in the case, sets up in his answer and swears on the trial that at his visits on the thirtieth of August and the ninth of September, it was agreed by and between him and Davis that he (Spicer) would not visit Davis regularly, and that if anything got out of fix or went wrong, Davis would send for

him.    All the evidence there is of such an agreement
is Spicer, himself.   Davis says there was no such an
agreement; that he told Spicer to come whenever he
thought he ought, as he knew best.    Frank Stephens
corroborates Davis.    He says that on the thirtieth of
August he was at Davis' house, when Spicer visited
him, and says he heard Davis ask Spicer when he
would be back, and say to him, "come whenever you
think it necessary."   Stephens also says that Spicer told
him, in his office at Fillmore, after Davis was up, that
he was so busy that he did not get to visit Davis as often
as he wished.   It is true Spicer denies telling Stephens
what Stephens says he did, yet Spicer admits that Steph-
ens was in his office and they had a talk about the mat-
ter; admits, in short, everything Stephens says, except
telling him the words Stephens says he did about not
visiting Davis oftener.   The jury was not bound to believe
Spicer in this matter, rather than Davis and Stephens.
Surely is that true when we consider the great number
of contradictions between Spicer and other witnesses in
this case.    He (Spicer) is contradicted about the setting
and measurement of the limb by six witnesses.   Spicer
says he gave Davis a dose of salts the night he set
his limb.    Davis says that he did not; that he took no
medicine.    The five gentlemen, who were present assist-
ing in and about the limb, corroborate Davis, and say
that they did not see Spicer give Davis any medicine
whatever.    The evidence shows that Davis lay in his
bed in as near the position in which Spicer left him,
with the splints and weights on, as was possible, for
about ninety days before he got up.    Davis swears to
this himself, and he is sustained and corroborated by
Madison Davis, his son ; James Rankin, George Elliott,
Mrs.   Stephens, his daughter; Mrs. Hays, Frank
Stephens, and John W. Hays.

VIII.   The able counsel for plaintiff in error argues
that Davis contributed to his injury by not notifying
Spicer when the splints split, and that one of the adhe-

sive strips had got loose, and by sitting up in bed, and by moving his leg to try its strength while the weights were attached. The evidence shows it was seventy-five days after the leg was broken before the splints split, and adhesive strip came loose, and about the same time that Davis sat up in his bed, and not far from the same time Davis moved his leg a little, to see if it was all right. What becomes of this argument when we look to the evidence of Frank Stephens, who says that Spicer told him in Fillmore, a month or six weeks after Davis was hurt, to tell Davis to get up, and to throw cold water in his bed, if necessary, to get him up ; and George Elliott, who says Spicer told him to tell Davis to get up, and he did so ; and the evidence of Spicer himself, who says that after six weeks from the time Davis was hurt, he did send word to Davis to get up ; that it would have been safe for Davis to get up on his crutches six or eight weeks after the fracture. Davis was propped up in bed and moved his leg to see if it was getting strong, and one of the strips came loose, all of which was long after Spicer sent him word to get up, and now the counsel for Spicer say these things were negligence. Did Spicer expect that Davis would get up on his crutches, and keep the straps on his leg, and the weights suspended thereto ? Does the learned counsel think Davis could have obeyed Spicer's instructions, and got up out of bed on his crutches, and keep the straps and weights in their places, suspended to his limb ? Does counsel intend to say that Spicer gave Davis improper instructions by sending him word to get up at the time he did ? Surely this argument of Spicer's counsel is not very consistent with the instructions of Spicer to Davis. Besides, the question of failure of Davis, or that of his nurses, to obey the directions of Spicer, and Davis' conduct in not sending for Spicer when the adhesive strip came off, were all submitted to the jury by instructions. The expert evidence in the case shows that Davis has a bad limb ; that it is from two and three-fourths to three inches short ;

that his foot is not in proper relation to his limb, and that he is permanently crippled. The evidence, to say the least, tends to prove (we think, proves beyond all question) that Spicer did not exercise ordinary skill and reasonable care and attention in and about the setting and treating of said limb. For these reasons, we say that the first point made by plaintiff in error is not well taken.

IX. On the third and fourth assigned errors made by plaintiff in error, we have to say that the instructions as a whole, taken together, fairly give to the jury the law governing this case. If there is error in the instructions, it is against Davis. By the instructions the jury were told : (1) That Spicer was only required to possess that reasonable degree of learning and skill ordinarily possessed by others of his profession, in the same general neighborhood or locality. (2) That in the treatment of the case Spicer was bound to use reasonable and ordinary skill, diligence, and care, as the nature and importance of the case required. (3) That he was bound to use his best judgment in all matters of doubt as to the best course of treatment. (4) That Spicer was not responsible for errors of judgment, or mere mistakes, in matters of reasonable doubt and uncertainty. (5) That Spicer was not responsible in damages to Davis for any injuries Davis may have sustained and suffered, unless such injuries were caused by the failure of Spicer to use reasonable, ordinary skill, or reasonable, ordinary care and diligence, in and about setting and treating Davis' broken thigh bone. (6) That it devolved upon Davis to prove the want of skill, or the want of diligence and care, on the part of Spicer, in setting and treating the thigh bone, and in the absence of satisfactory proof thereof, the presumption was that Spicer was competent and had done his duty. (7) That if there was an agreement between Spicer and Davis, on the ninth day of September, next after Davis' thigh was broken, that if anything happened or went wrong, Davis would send

for Spicer and let him know, and injury resulted to Davis after that date, from straps coming off, or any other cause, and he, Davis, did not send for Spicer, nor give him any word thereof, then Davis could not recover for such injury. (8) That if Davis' nurses and attendants, or Davis himself, failed to carry out and obey the necessary instructions and directions of Spicer in and about the nursing and care of Davis' broken thigh bone, and that Davis' injury resulted from that cause, wholly or in part, then, and in that case, Davis could not recover. The counsel for plaintiff in error object to some of the instructions, because the court told the jury that contributory negligence that would prevent Davis from recovering, must have directly contributed to the injury. We maintain that is the law in this case, and most certainly is that true, in view of other instructions given, on the part of Spicer, which single out certain things about Davis not sending after Spicer if anything went wrong, and telling the jury that, under that state of the case, Davis could not recover. This is not a proper case to give instructions on contributory negligence, involving the proposition that, although the injured party may have been guilty of negligence, in the first instance, by putting himself in a position to be injured, yet, if the other party knew, or could, by reasonable diligence, have known of the exposed situation of the injured party, and could have prevented the injury by the exercise of reasonable diligence and care, the injured party would still be entitled to recover. There is no state of facts, under the evidence, for such instructions, in this case. We think the instructions were very favorable for Spicer, and that the judgment is for the right party, and, under all the circumstances of the case, the judgment is small, and Spicer has no right to complain, and that the judgment ought to be affirmed by this court.

*On motion for rehearing.*

JAMES F. MISTER, for the motion.

I.   There are exceptions to the rule that this court will not weigh the evidence, as (1) where it is apparent, from the conclusion reached, that it must have been the result of passion or prejudice ; or (2) a blind disregard of the evidence ; or (3) a blind disregard of the instructions of the court.   The verdict, in this case, comes within all these exceptions.

II.   The objections to the instructions, given and modified by the court, are not limited to the use of misleading words, such as "directly" for "proximately"—with all due deference to the opinion of this court to the contrary (which, by the way, seems to be in conflict with controlling decisions in this state, as follows : *Callahan v. Warne* (40 Mo. 136), *Morrissey v. Ferry Co.* (43 Mo. 383), *Schaabs v. Wheel Co.* (56 Mo. 176), *Karle v. Railroad* (55 Mo. 484), to say nothing of the uniform decisions of the courts of England and America to the same effect) ; but the objections go to the qualifying of the liability of the plaintiff, and unduly extending that of defendant, by authorizing the jury to sit as medical experts, to determine "whether the fracture could have been treated so as to have saved plaintiff from permanent injury," and the elements contained in them as to damages, implying wilfulness, or criminal negligence, thus distracting the attention of the jury from the real issues to questions of conjecture and speculation merely.

III.   The general doctrine of contributory negligence must be applied along with a new and additional element arising out of the peculiar and confidential relation of physician and patient.   This relation, while requiring the physician to have and exercise ordinary skill and learning, and due diligence and attention to the condition of the patient, devolves the duty and obli-

gation upon the patient to comply with his instructions, and follow his directions, and if he does not, and injury results, the physician is not liable. *Baird v. Morford*, 29 Iowa, 22; *Hibbard v. Thompson*, 109 Mass. 286; *Gram v. Boener*, 56 Ind. 497; *Geiselman v. Scott*, 25 Ohio, 86. And even the pressure of pain, disabling him for the time, will not excuse him.

IV. The case was not fairly submitted to the jury, and the evidence did not authorize the verdict. In none of the instructions is the law, applicable to the facts in evidence, clearly, or at all, presented to the jury. The only instruction which approximates it is the fourth, asked for defendant, which was modified by inserting the word "directly" before " contributing." Ordinarily, this insertion might not be technically objectionable, since it is frequently used in the opinions of courts, and by the law writers, to guard against the consideration of negligence not at all connected with the injury, or with the result of the treatment of it. But there is no case in the books, however loosely stated as to law or fact, which does not make the failure, or refusal to coöperate with the physician, by the patient, an absolute bar to recovery. Nor did the evidence authorize the verdict. The skill and competency of Spicer was shown by the common voice of all the physicians testifying. The methods of treatment were shown to be the best now in use. The care and attention were unwearied and diligent during the crisis of danger, and the agreement to "notify him if anything went wrong" was explicit. The promise was utterly disregarded by Davis, and the directions of his physician were disobeyed or ignored.

V. If the reputation of a physician of thirty years' practice is to be finally adjudged by such a tribunal as a jury, and left undisturbed here, because there is some evidence authorizing it, there seems to be no protection for him. Under the law, he is under no liability in this case. Can the judgment of a jury, misled as to the law

by the trial court, and going beyond their province, make him liable?

Hall, J.—This was an action for damages for malpractice, in the unskilfulness with which defendant set and treated plaintiff's leg. The plaintiff's evidence tended to prove that the broken limb was not set at all by the defendant—that is, that the broken bones were not placed in proper apposition. The said evidence tended very strongly to prove that the defendant, in attempting to set the broken leg, had one Downing, who was, among others, present at the operation, pull out the leg to reduce the fracture, and that the defendant, instead of measuring the broken leg, had one Rankin sight along it, in order to ascertain whether it was of the proper length, and that Rankin, in response to a question by the defendant as to the length of the leg, said that it was short by three-fourths of an inch, and that the defendant remarked, "all right." Said evidence also tended to prove that if the broken leg was short, as stated by Rankin, it was not set. If the leg was not then set, it was never set, because the defendant made no other attempt to reduce the fracture. Said evidence showed that plaintiff's broken leg was short, by from two and three-fourths to three inches, and that such condition was permanent. The evidence also showed that, in a case like the plaintiff's, there is always shortening of the broken leg. The average shortening, under proper treatment, was variously stated to be from three-fourths of an inch to one and one-half inches.

The defendant's evidence tended to show that he properly set the broken leg, and properly treated it. His evidence also tended to prove that the plaintiff had been guilty of carelessness and negligence, and of a failure to comply with the defendant's directions. As to this, however, the plaintiff's evidence tended to prove the contrary.

We will not weigh the evidence. We cannot say,

after an examination of all the evidence, that the verdict in favor of the plaintiff was the result of passion and prejudice.

The objection to the instructions given by the court requiring the jury to find that the plaintiff's negligence *directly* contributed to his injury, before they could, on that ground, find for the defendant, is not well made. The counsel for defendant contends that the instruction should have used the word "proximately" instead of "directly." "Proximately" is the technical and more accurate word, and is used by text-writers, and in the opinions of courts generally, where the effect of the plaintiff's contributory negligence is scientifically discussed, but, in this connection, the two words are synonymous. In fact, the word "directly" is the better word in an instruction, since it conveys to the minds of the jury a clearer meaning of the court's charge, and is the word ordinarily used in instructions, as is shown by the long list of cases cited in plaintiff's brief.

The court gave, for the defendant, all the instructions asked by him, and only modified one of such instructions, by inserting the word "directly" in the instruction, so as to require the contributory negligence of plaintiff to have directly contributed to his injury, in order to relieve the defendant.

The case was fairly submitted to the jury. The evidence authorized the verdict. Judgment affirmed. All concur.

PHILIPS, P. J., CONCURRING.—I concur in the result, as I do not think it essential to the case to hold that the word "directly" is the better word, usually to be preferred to "proximately."