51 So.2d 544

### GULF ATLANTIC WAREHOUSE CO. v. BENNETT et al.

#### 6 Div. 121.

Court of Appeals of Alabama.
March 20, 1951.

Cabaniss & Johnston, of Birmingham, for appellant.

J. L. Busby and Earl McBee, of Birmingham, for appellees.

CARR, Presiding Judge.

This appeal is from a judgment in the circuit court in favor of three claimants for unemployment compensation. By agreement these cases were tried jointly,

and the appeals have been consolidated into one record.

The evidence in the main is not in dispute.

The Gulf Atlantic Warehouse Company (which we will herein designate as the company) operated a warehouse in the City of Birmingham, Alabama. Its sole function was the operation of a public warehouse for the handling and storage of cotton. Prior to the time of instant concern the claimants were employed by the company.

It appears that for a number of years their employment had been subject to collective bargaining on an annual basis. In July 1948 such an agreement was entered into for the period from August 1, 1948, through July 31, 1949.

On May 25, 1949, a representative of the bargaining union notified the company by letter of a desire to begin negotiations for the execution of a new contract which would take effect at the expiration of the current one.

Incident to this request the first meeting was held on June 6, 1949. The conferences continued through July 30, 1949, with about nine meetings during the interim. No agreement for a new contract was reached at any of these times. It appears that a new contract agreement was entered into on April 27, 1950.

In July 1949 the company, being apprehensive that there might be a walkout or work stoppage at the expiration of the current contract, gave notice to this effect to its various customers.

Promptly after the receipt of this notification the customers ordered substantial amounts of cotton shipped from the company's warehouse, and shipments into the establishment practically ceased. This condition continued throughout practically all of the month of August and resulted in no available work for the claimants.

About the last of August and during the month of September the company received some storage cotton from the Commodity Credit Corporation and business at the warehouse was resumed on a limited basis.

In January 1950 the business reached its normal proportions.

It is for unemployment benefits during the idle time in August that claimants claim compensation.

The company's counsel in brief poses the question for our review in this succinct manner:

"It was appellant's contention before the trial court, and we take the same position here, that a labor dispute was created and existed between the Union representing the majority of appellant's employees and appellant from the commencement of the labor contract negotiations, or at least from the date of termination of the old contract (July 31, 1949), and continued until April 27, 1950, the date of execution of the next subsequent collective bargaining agreement. There can be no argument as to this matter. But appellant further contends, and this is the crux of the case, that the lack of business during August, 1949, which caused appellees' unemployment, resulted directly from the existence of this labor dispute, hence that the unemployment was directly due to a labor dispute within the meaning of the disqualification provision of Section 216 [subd.] A of Title 26, Code 1940."

In the recent case of Department of Industrial Relations v. Stone, Ala.App., 53 So.2d 859,[1] we reviewed the historical background of the act in question and discussed the prime purpose of its passage. We there pointed out that the disqualifications from the benefits of the statute are exceptions and should be narrowly construed.

It is evincingly clear that the matter of critical concern in the instant case relates to the proper interpretation and construction of the expression "is directly due to a labor dispute" as it appears in Title 26, Sec. 214, Subd. A, Code 1940.

In the early case of Thompson v. State, 20 Ala. 54, the Supreme Court stated this canon of construction:

1. Ante, p. 16.

"* * * an interpretation should never be adopted which would defeat the purpose of the statute, if any other reasonable construction may be given to it, The Emily, 9 Wheat 381, 6 L.Ed. 116; and * * * the literal interpretation of an act is not always that which either reason or the law approves. The inartificial manner in which many of our statutes are framed, the inaptness of expressions frequently used, and the want of perspicuity and precision not unfrequently met with, ofter (sic) require the court to look less at the letter or words of the statute, than at the context, the subject-matter, the consequences and effects, and the reason and spirit of the law, in endeavoring to arrive at the will of the law giver."

Some courts have held that the words "directly" and "proximately" are synonymous when applied to tort actions. Fineburg v. Lincoln-Phelps Apt. Co., 55 Ohio App. 402, 9 N.E.2d 1011; Davis v. Spicer, 27 Mo.App. 279; Missouri, K. & T. Ry. Co. of Texas v. Lyons, Tex.Civ.App., 53 S.W. 96; Gates v. Burlington, C. R. & M. R. Co., 39 Iowa 45. See also, Employers' Casualty Co. v. Underwood, 142 Okl. 208, 286 Pac. 7.

We have read with a great deal of interest an article, "Unemployment Compensation in Labor Disputes, Vol. 49, The Yale Law Journal, pp. 461-491. This article is authored by Herbert A. Fierst, member of the New York Bar, and Marjorie Spector, Economist, Bureau of Research and Statistics, New York Division of Placement and Unemployment Insurance. On page 484 we find this statement:

"The decisions dealing with the causal relationship between the labor dispute and the loss of employment or stoppage of work bear all the earmarks of the metaphysical torts nemesis: when does an intervening force break the chain of proximate cause?

"The stoppage of work must be due to the dispute. If operations would have ceased in any event, because of economic conditions or the advent of the slack season, no disqualification is applied despite the obvious existence of a labor dispute. And when the stoppage is no longer due to the dispute but to economic conditions, loss of contracts, cancellation of orders or liquidation of the business by the employer, disqualification is lifted."

Under footnote 148 on this page the authors refer to the following statement from Ind.Bd.Rev. No. 39–LDR–5 (Nov. 18, 1939):

"Similarly, where an employer, in anticipation of a strike, stepped up production to such an extent that at the time fixed for the strike, further production was impossible, held, cessation of work not due to labor dispute."

We find ourselves in accord with this observation.

In the case at bar the cessation of work was not due to overproduction, but rather underproduction. This latter condition, however, was due to the company's apprehension of a strike or work stoppage and on this account its customers ceased active business relations with the warehouse. The unemployment was directly due to a misapprehension of the customers and not to a labor dispute between the claimants and the company.

According to Webster's New International Dictionary, Second Edition, "directly" means "in a direct manner; in a straight line; without deviation of course; wholly; completely; in a direct way; without anything intervening."

In the instant case an agency independent of the labor dispute intervened and became the cause of the unemployment. Under such circumstances it cannot be logically deduced that the time of unemployment, for which compensation is sought, was "directly due to a labor dispute."

It follows that the judgment below must be affirmed. It is so ordered.

Affirmed.