This certiorari review involves two class actions for unemployment compensation. The classes consist of employees of Teledyne Continental Motors Aircraft Products (TCM), a division of Teledyne Industries, Inc. Douglas Williams and Fred Savell are the class representatives. The issue presented is whether the Court of Civil Appeals correctly held that the hiring of permanent employees to replace striking workers does not end the statutory disqualification for unemployment benefits found at § 25-4-78(1), Ala. Code 1975, when the unemployment is directly due to a labor dispute, 646 So.2d 19.
The facts are undisputed. The members of the class were actively employed at TCM and were covered by a collective bargaining agreement between TCM and United Auto Workers Union (UAW); that agreement expired in June 1989. TCM and UAW engaged in negotiations for a new contract, but reached no agreement. On February 15, 1990, UAW began a strike, and all of the class members participated in the strike. In early April 1990, TCM notified UAW that permanent replacements would be hired to replace the striking workers. When TCM hired the permanent replacements in April and May, the class members filed claims for unemployment compensation. The claims were denied.
The strike and picket lines continued until November 30, 1990, when UAW made an unconditional offer to return to work. The class members returned to their former jobs on February 4, 1991. They applied for and received unemployment compensation benefits from November 30, 1990, until February 4, 1991. The Alabama Department of Industrial Relations, Unemployment Compensation Division, denied their applications for unemployment compensation from April 1990 through November 29, 1990, on the ground that they were disqualified from receiving benefits under § 25-4-78(1), Ala. Code 1975. The class members appealed the denial of benefits, and an appeals referee upheld the disqualification. The class members then appealed to the Department of Industrial Relations Board of Appeals, which also upheld the disqualification. The Court of Civil Appeals affirmed the Board's decision, holding that the class members were disqualified for unemployment benefits between April and November 1990 under § 25-4-78(1), Ala. Code 1975.[1]
The class members contend that they were improperly denied unemployment compensation benefits from April 1990 through November 1990. They claim that the statutory disqualification for unemployment compensation for unemployment arising out of a labor dispute ended when TCM permanently replaced the striking employees. TCM argues that the Court of Civil Appeals correctly denied the class plaintiffs unemployment benefits. TCM asserts that the class members were actively engaged in a labor dispute as defined by § 25-4-78(1) until November 30, 1990, that the employees received strike benefits during their strike, and that the class members applied for and received unemployment compensation after ending their strike on November 30 and received compensation until TCM reinstated them on February 4, 1991. Thus, TCM argues, the class members are attempting to obtain unemployment benefits for a period while they were on strike.
The issue in this case, whether the hiring of permanent replacement employees *Page 24 
for striking workers ends the statutory disqualification for unemployment benefits where the unemployment is directly due to a labor dispute, has never been squarely addressed by the courts of this state. Although there are no Alabama cases holding precisely that Alabama's labor dispute disqualification statute disqualifies workers who have been replaced by replacement workers and are continuing a strike against their employer, at least one case impliedly holds that the workers are still disqualified while the strike is continuing. InT.R Miller Mill Co. v. Johns, 37 Ala. App. 477, 479-80,75 So.2d 670, 671, cert. denied, 261 Ala. 615, 75 So.2d 675 (1954), employees of the mill went on strike on March 18, 1952, and continued on strike until June 2, 1952, when they tried to return to work but were advised that their positions had been filled by replacements. The mill operated with replacements during the entire strike. The Court of Appeals upheld the trial court's order denying unemployment benefits from March 18 through June 2 but not denying them after June 2, when the workers tried to return work. The result reached by the Court of Civil Appeals in the instant case is consistent with that reached in the T.R. Miller Mill Co. case.
The interpretations given other states' labor dispute disqualification statutes by their respective courts can be divided into two general categories: interpretations of "stoppage of work" statutes and interpretations of "labor dispute in active progress" statutes. In states with "stoppage of work" statutes, the mere hiring of permanent replacement workers lifts the labor dispute disqualification. States with such statutes include Michigan, Indiana, Ohio, Colorado, and California. In states with "labor dispute in active progress" statutes, a striking employee who has been replaced usually must show that he has abandoned the strike and has unconditionally offered to return to work before the labor dispute disqualification can be lifted. States with such statutes include Wisconsin, Minnesota, Tennessee, Oregon, and Arizona. The Court of Civil Appeals held that Alabama's statute soundly falls within the "labor dispute in active progress" category. We agree.
We recognize that there is usually no special language in a state's labor dispute disqualification statute that clearly places it in one of the two categories. States with substantially the same language in their statutes may give their statutes entirely different interpretations. For example, Tennessee's statute has essentially the same language as Indiana's, yet Tennessee's is interpreted as a "labor dispute in active progress" statute while Indiana's is interpreted as a "stoppage of work" statute. See Bailey v. Tennessee Dep't ofEmployment Sec., 212 Tenn. 422, 370 S.W.2d 492, 496 (1963) (holding that notices of discharge did not terminate the labor dispute disqualification); Arvin N. Am. Automotive v. ReviewBd. of the Indiana Dep't of Employment Training Services,598 N.E.2d 532, 537 (Ind.Ct.App. 1992) (holding that an employer's act of permanently replacing striking workers severs the employer-employee relationship and thereby removes the statutory labor dispute disqualification). Compare Tenn. Code Ann. § 50-7-303(a)(4) (1993 Supp.) (declaring a person ineligible for unemployment benefits "[f]or any week with respect to which the commissioner finds that the claimant's total or partial unemployment is due to a labor dispute, other than a lockout, which is in active progress at the factory, establishment or other premises at which the claimant is or was last employed"), with, Ind. Code Ann. § 22-4-15-3 (Burns 1992) ("An individual shall be ineligible for waiting period or benefit rights for any week with respect to which his total or partial or part-total unemployment is due to a labor dispute at the factory, establishment, or other premises at which he was last employed."). The courts of other states have not taken the phrase "labor dispute in active progress" or similar language in the statute as dispositive in determining whether their statutes are "labor dispute in active progress" statutes or "stoppage of work" statutes. See Mich. Comp. Laws § 421.29(8) (1979) ("An individual shall be disqualified for benefits for a week in which the individual's total or partial unemployment is due to a labor dispute in active progress. . . .");Knight-Morley Corp. v. Michigan Unemployment Sec. Comm'n,352 Mich. 331, 89 N.W.2d 541 (1958) (applying a "stoppage of work" interpretation to *Page 25 
the labor dispute disqualification statute). This does not mean, however, that we should disregard the language of the statute.
The Alabama labor dispute disqualification statute states that a labor dispute may exist "regardless of whether the disputants stand in the proximate relation of employer and employee." § 25-4-78(1), Ala. Code 1975. The states that apply a "stoppage of work" interpretation to their statutes reason that the employer's replacement of striking workers terminates their status as employees and that an employer-employee relationship is an essential element of a labor dispute. See Arvin N. Am.Automotive v. Review Bd. of the Indiana Dep't of Employment Training Services, 598 N.E.2d 532, 537 (Ind.Ct.App. 1992) ("[A]n employer's act of permanently replacing striking workers severs the employer-employee relationship thereby removing the statutory labor dispute disqualification."); Federico v.Brannan Sand Gravel Co., 788 P.2d 1268, 1273 (Colo. 1990) ("We conclude that an employee involved in a labor dispute is entitled to unemployment compensation benefits when the employer-employee relation has been terminated with respect to that employee. The employer-employee relationship can be terminated by the permanent replacement of the employee.");Baugh v. United Telephone Co., 54 Ohio St.2d 419,377 N.E.2d 766, 769 (1978) ("Thus, pivotal to the resolution of the instant cause is a determination of whether the employer terminated the appellants' status as employees."); Ruberoid Co.v. California Unemployment Ins. Appeals Bd., 59 Cal.2d 73,27 Cal.Rptr. 878, 883, 378 P.2d 102, 107 (1963) ("By the replacement the employer completely terminated any relationship with the worker."); Thomas J. Goger, Annotation, Comment Note.— General Principles Pertaining to Statutory Disqualificationfor Unemployment Compensation Benefits Because of Strike orLabor Dispute, 63 A.L.R.3d 88, 113-15 (1975) (discussing cases holding the view that an employment relationship is essential to disqualification).
Those states that apply a "labor dispute in active progress" interpretation do not hold that replacement of striking workers terminates their status as employees or that an employee-employer relationship is essential to a labor dispute.See Rice Lake Creamery Co. v. Industrial Comm'n, 15 Wis.2d 177,112 N.W.2d 202, 205 (1962) ("We hold that replacing striking employees during the progress of a strike with permanent employees is not in and of itself, as a matter of law, a termination of the employment status or a discharge of the striking employees."); Bailey v. Tennessee Dep't of EmploymentSec., 212 Tenn. 422, 370 S.W.2d 492, 494 (1963) ("the relationship of employer-employee is not a prerequisite to the existence of a labor dispute"); Milne Chair Co. v. Hake,190 Tenn. 395, 230 S.W.2d 393, 395 (1950) ("[T]he Board was of the opinion that a labor dispute could not exist in the absence of an employer-employee relationship. . . . However, the relationship of employer-employee is not a prerequisite to the existence of a labor dispute in the application of our Employment Security Act."); Johnson v. Wilson Co., 266 Minn. 500, 124 N.W.2d 496, 503 (1963) ("If the striking employee does not accept the attempted discharge, the employer's conduct may be insufficient to destroy the status of the worker, in which event the disqualification persists."); Adams v. EmploymentDivision, 78 Or. App. 570, 717 P.2d 1199, 1201 (1986) ("permanent replacement is irrelevant during the active pendency of the labor dispute"); Thomas J. Goger, Annotation,supra, 63 A.L.R.3d at 115-17 (discussing cases holding that an employment relationship is not essential to disqualification). The "regardless of whether the disputants stand in the proximate relation of employer and employee" language enacted by Alabama's legislature, § 25-4-78(1), Ala. Code 1975, could have no intent other than to make replacement of striking workers irrelevant to whether a labor dispute is in progress. Thus, this language makes Alabama's labor dispute disqualification statute a "labor dispute in active progress" type of statute.
Minnesota is the only state other than Alabama that includes in its disqualification statute a phrase similar to "regardless of whether the disputants stand in the proximate relation of employer and employee" in *Page 26 
its definition of "labor dispute."[2] See Minn.Stat. § 268.09
subd. 3(c) (1992) ("For the purpose of this subdivision the term 'labor dispute' shall have the same definition as provided in the Minnesota labor relations act."); Minn.Stat. § 179.01
subd. 7 (1992) (" 'Labor dispute' includes any controversy concerning employment, tenure or conditions or terms of employment or concerning the association or right of representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms, tenure, or other conditions of employment, regardless of whether or not therelationship of employer and employee exists as to thedisputants" (emphasis added).). The Supreme Court of Minnesota cited this definition when it interpreted Minnesota's labor dispute disqualification statute to be a "labor dispute in active progress" type of statute. Johnson v. Wilson Co.,266 Minn. 500, 124 N.W.2d 496, 502-03 (1963). We are persuaded that Alabama's statute falls in the "labor dispute in active progress" category. We are so persuaded because of 1) the reasoning of the courts of "labor dispute in active progress" states that the employer-employee relationship is either not destroyed or is not relevant to a labor dispute; 2) the "regardless of whether the disputants stand in the proximate relation of employer and employee" language of Alabama's statute; and 3) the construction of the similar Minnesota statute by the Minnesota courts.
Also supporting our conclusion that Alabama's statute is within the "labor dispute in active progress" category is the fact that Alabama's unemployment compensation statute, the second in the nation to be enacted, was modeled on the Wisconsin unemployment statute. See Usher v. Department ofIndus. Relations, 37 Ala. App. 698, 702, 75 So.2d 159, 162
(1952) ("[The labor dispute disqualification] section was based on a comparable provision in the unemployment compensation law of Wisconsin, the only state to adopt an unemployment compensation law prior to our state."), rev'd, 261 Ala. 509,75 So.2d 165 (1954).[3] We recognize that the Wisconsin interpretation is not binding on us; nevertheless, because our statute was based *Page 27 
on Wisconsin's statute, the Wisconsin interpretation is persuasive authority here. In Rice Lake Creamery Co. v.Industrial Comm'n, 15 Wis.2d 177, 112 N.W.2d 202, 205 (1962), the Supreme Court of Wisconsin held "that replacing striking employees during the progress of a strike with permanent employees is not in and of itself, as a matter of law, a termination of the employment status or a discharge of the striking employees." We find the Wisconsin interpretation to be a reasonable interpretation and find no compelling reasons not to follow it.
Interpreting the Alabama labor dispute disqualification statute as a "labor dispute in active progress" statute also better effectuates the purposes of the statute. Two of these purposes are ensuring government neutrality in labor disputes and protecting an employer from having to finance strikes by his employees. Peak v. State Dep't of Indus. Relations,340 So.2d 796, 800 (Ala.Civ.App. 1976). See also, Kitchen v. G.R.Herberger's, Inc., 262 Minn. 135, 138, 114 N.W.2d 64, 66 (1962) ("[T]he purpose of [the statute] is to preserve the status quo of the parties during the course of a labor dispute so that at its cessation they will stand in the same relation to each other as at the beginning so far as the payment of benefits under the act is concerned. The legislative policy underlying this statute protects employers from having to finance a strike against themselves, as would be the case if their accounts were charged for payment of the unemployment compensation benefits to their employees during the progress of a labor dispute.");Brobston v. Employment Sec. Comm'n, 94 Ariz. 371, 374,385 P.2d 239, 241 (1963) ("The Statute is designed to preserve the neutrality between an employer and his employees by withdrawing, irrespective of individual needs, benefits under the circumstances enumerated. Palpably, the intent of the legislature is that the state shall stand aside in order that a labor dispute may not be financed through unemployment compensation."); Thomas J. Goger, Annotation, supra, 63 A.L.R.3d 88, 104-06 (1975) (discussing the reasons underlying enactment of labor dispute disqualification statutes). Requiring employers who replaced striking workers in order to continue their operations to pay unemployment compensation to striking workers would tend to defeat both of these purposes. The state would be giving an advantage in the dispute to the striking workers by requiring the employer to finance the strike. We therefore hold that the Court of Civil Appeals' interpretation of our labor dispute disqualification statute as a "labor dispute in active progress" statute is consistent with the purposes of the statute.
The class members argue that their unemployment between April and November 1990 was not "directly due to a labor dispute" because, they say, the act of TCM in replacing them was an intervening cause of their unemployment and therefore removes them from the labor dispute disqualification. They citeGulf Atlantic Warehouse Co. v. Bennett, 36 Ala. App. 33, 36,51 So.2d 544, 547 (1951), as defining "directly" under the statute as "without anything intervening." The intervening cause inGulf Atlantic Warehouse was a lack of orders that resulted in "no available work for the claimants." 36 Ala. App. at 34,51 So.2d at 545. This intervening cause was "an agency independent of the labor dispute," not the act of a party to the labor dispute. Id. Likewise, in Ex parte Flowers, 435 So.2d 76, 77
(Ala. 1983), "lack of work" was the intervening cause. In the instant case, the replacement of striking workers was not an outside intervening cause but rather was an act of one of the participants in the labor dispute. The hiring of replacements could even be considered a tactic used in the labor dispute to break the strike and induce striking workers to come back to work. This case is easily distinguishable from cases likeFlowers and Gulf Atlantic Warehouse, where customer or supplier apprehension of a strike led to a lack of work for employees. Thus, replacement of striking workers is not the type of event that would end the labor dispute disqualification for unemployment benefits. See Building Prods. Co. v. Arizona Dep'tof Economic Sec., 124 Ariz. 437, 441, 604 P.2d 1148, 1152
(Ct.App. 1979) ("We cannot agree with the cases which have held that permanent replacement and loss of benefits are sufficient intervening acts to alter the original cause of unemployment. To do so would fly in the *Page 28 
face of the literal language and purpose of [the labor dispute disqualification statute].").
We recognize that the conduct of the employer in hiring replacement workers, while not analogous to the closing of a plant, which occurred in Department of Industrial Relations v.Nix, 381 So.2d 651 (Ala.Civ.App. 1980), did remove some of the economic impact of the strike as a tool in the labor negotiations; still, if employees continue to strike and negotiate after the employer has hired replacement workers, it seems that the strike is still in active progress as to those striking workers. In this case, the plaintiffs continued to strike and negotiate with TCM. The hiring of replacement workers does not end the labor dispute, so the labor dispute disqualification is not removed solely because the employer took this action. The striking workers must abandon their strike for the labor dispute disqualification to be lifted.
Based on the foregoing, we hold that the hiring of permanent replacement employees to replace striking workers does not end the statutory disqualification for unemployment benefits imposed by § 25-4-78(1) when the unemployment is directly due to a labor dispute. Therefore, we affirm the judgment of the Court of Civil Appeals.
AFFIRMED.
SHORES, HOUSTON, STEAGALL and INGRAM, JJ., concur.
[1] Section 25-4-78, Ala. Code 1975, states:
 "An individual shall be disqualified for total or partial unemployment:
 "(1) LABOR DISPUTE IN PLACE OF EMPLOYMENT. — For any week in which his total or partial unemployment is directly due to a labor dispute still in active progress in the establishment in which he is or was last employed. For the purposes of this section only, the term 'labor dispute' includes any controversy concerning terms, tenure or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing or seeking to arrange terms or conditions of employment, regardless of whether the disputants stand in the proximate relation of employer and employee. This definition shall not relate to a dispute between an individual worker and his employer."
[2] While other states have statutes defining "labor dispute" with language identical to or very similar to "regardless of whether the disputants stand in the proximate relation of employer and employee," these are limited in application to the chapter, title, or section of the code in which they are found and do not apply to the "labor dispute" disqualification for unemployment compensation. For example, Michigan, a "stoppage of work" state, defines "labor dispute" in its labor Mediation act as "any controversy concerning terms, tenure, or conditions of employment . . . regardless of whether the disputants stand in the proximate relation of employer and employee." Mich.Comp. Laws § 423.2(b) (Supp. 1993). However, this definition is limited by the words "As used in this act." Mich.Comp. Laws §423.2 (Supp. 1993). The words "this act" refer to the Labor Mediation act, found at chapter 423 of the Michigan Compiled Laws and 1939 Michigan Public Acts, No. 176. See also, Cal.Civ.Proc. Code § 527.3(4) (West 1979) ("Except as provided in subparagraph (iv), for purposes of this section, 'labor dispute' is defined as follows: . . . (iii) The term "labor dispute' includes any controversy concerning terms or conditions of employment . . . regardless of whether or not the disputants stand in the proximate relation of employer and employee" (emphasis added).); Cal.Lab. Code § 1140.4 (West 1989) ("As used in this part: . . . (h) the term 'labor dispute' includes any controversy concerning terms, tenure, or conditions of employment . . . regardless of whether the disputants stand in the proximate relation of employer and employee" (emphasis added).); Ind. Code Ann. § 22-6-1-12 (Burns 1992) ("When used in [chapter 1 of Article 6] and for thepurpose of this chapter: . . . (c) The term 'labor dispute' includes any controversy concerning terms or conditions of employment . . . regardless of whether or not the disputants stand in the proximate relation of employer and employee" (emphasis added).); Thomas J. Goger, Annotation, supra, 63 A.L.R.3d 88, 107 (Ordinarily, the unemployment compensation statutes in effect in the various states contain no definition of the term 'labor dispute.' An exception is the Alabama statute. . . .").
[3] This Court held in Usher, 261 Ala. 509, 75 So.2d 165 (1954), that a claimant/employee was not disqualified under the labor dispute disqualification statute where a labor union of which the claimant is not a member calls a strike that results in the claimant's losing his job and neither the claimant nor the claimant's union took part in or had a dispute with the employer. Thus, the holding in Usher is not relevant to this case, which does involve employees who were members of a union actively engaged in a labor dispute. The Court of Appeals opinion in Usher is cited here only for the proposition that Alabama was the second state to enact an unemployment compensation statute and the proposition that Alabama's act was modeled on Wisconsin's act.