Block Coal & Coke Co. *et al. v.* United Mine Workers of America, Dist. No. 19, *et al.*

(*Nashville*, December Term, 1940.)

Opinion filed March 8, 1941.

248

LINDSAY, YOUNG & ATKINS, of Knoxville, for appellants.

HAL H. CLEMENTS, SR., and HAL H. CLEMENTS, JR., of Knoxville (NORMAN B. MORRELL, of Knoxville, of counsel), for appellees.

MR. JUSTICE CHAMBLISS delivered the opinion of the Court.

In keeping with a commendable general policy of the times to provide more stable conditions of social security, the Tennessee Legislature provided a system of unemployment compensation benefits by the passage of Chapter No. 1, Public Acts of 1936, First Extraordinary Session, amended by Chapter No. 128, Public Acts of 1937, and Chapter No. 131, Public Acts of 1939, which is known as the Unemployment Compensation Law. The economic need for this legislation was set forth and declared in Section 2 of the Act to provide against "Involuntary unemployment," the general welfare requiring the enactment of this measure "for the compulsory setting aside of unemployment reserves to be used for the benefit of persons unemployed through no fault of their own."

Claimants herein, who are coal miners, presented claims for compensation under this law to the Commissioner of Labor, which were resisted by their em-

ployers, on the ground that the unemployment alleged was "due to a labor dispute." The Commissioner held in favor of claimants. The Board of Review, provided for by the Act, after a full hearing, found that the unemployment of claimants was "due to a labor dispute," and denied the claims. Claimants thereupon filed their petition for *certiorari* in the Chancery Court. The Chancellor holding himself disqualified, Circuit Judge BROWN heard the case and sustained the petition and awarded claimants compensation. The employers, Block Coal and Coke Company, et al., have appealed. It is conceded that the determinative question is that hereinbefore indicated, whether or not the unemployment for which compensation is sought was "due to a labor dispute."

Section 5 of the Act provides that "an individual shall be disqualified for benefits" under conditions and for reasons set forth in this section, the immediate provision here pertinent being subsection (d) reading: "For any week with respect to which the Commissioner finds that his total or partial unemployment is due to a labor dispute which is in active progress at the factory, establishment, or other premises at which he is *or was last* employed," followed by certain provisos, not relevant here. (The significance of the words we have italicized will hereinafter become apparent.)

A somewhat more extended statement of the facts of this case is required. The Southern Appalachian Coal Operators' Association is a voluntary association of corporations (including appellant employers) owning and operating mines for the production of coal in East Tennessee and other sections of the South. The United Mine Workers of America is a voluntary unincorporated association of individuals employed in the mining of coal. April 2, 1937, the Southern Appalachian Coal Operators'

Association and a number of like associations, entered into a written contract with the United Mine Workers of America to continue in effect to March 31, 1939, which contract governed the conditions of employment relations betwen the coal operators and the coal miners. It provided that, ''A joint conference of representatives of the [naming the various coal operators' associations signatories to the contract] and the International Union, United Mine Workers of America and Districts . . . 19 . . . shall be held in the City of New York, N. Y., March 14, 1939, to consider what revisions, if any, shall be made in this Agreement as to hours, wages and conditions of employment.'' Pursuant to this provision of the contract a committee selected by all of the coal operators, including appellant employers, met in New York City on the day designated with a number of representatives of the United Mine Workers of America. At the meetings of the two committees, both the operators and the United Mine Workers presented a number of demands for changes which they desired to make in the revision of the contract. Negotiations beginning on March 14th were continued from day to day, with argument pro and con between the parties, various demands and counter-demands being presented and refused, and no agreement having been arrived at by March 31st as to the terms upon which work at the mines would be continued after that date, the negotiations and discussions between the parties were continued and so proceeded with until a day in May when an agreement was finally reached and a new contract entered into for an additional two years.

Meanwhile, in accordance with what plainly appears to have been a mutual understanding between the parties to the controversy, work ceased at the mines at midnight, March 31st, and claimants hereunder, along with

many others, in Tennessee and other States became, unemployed, and so remained pending the efforts of their representatives in New York to resolve their differences, until the new agreement was reached on the said day in May, when work was resumed. It is for these weeks of unemployment, pending these discussions and negotiations over terms of future employment, that compensation is sought by claimants.

The case has been fully and ably briefed and argued and the labors of the Court thereby lessened. The basic facts are not in material dispute. The legal dispute, as already indicated, is as to whether or not, on these facts, the unemployment was "due to a labor dispute."

In the first place, whatever may be said of the conclusion of the trial judge in favor of appellee-claimants, we are wholly unable to agree with his reasoning set forth in his opinion, which is incorporated in his decree. We quote the following excerpts therefrom:

"The contract entered into in the spring of 1937 expired by its own terms at midnight, March 31, 1939. Therefore, on and after April 1, 1939, the relationship of employer and employee did not and could not exist as between these parties. Unless the relationship of employer and employee existed the Court is unable to see how from any logical reasoning that a 'labor dispute' existed.

"The Court cannot further see, assuming for the purpose of argument, that the relationship of employer and employee did exist after the expiration of the contract, and of course the Court thinks it did not exist. The Court cannot see how a 'labor dispute' could exist so long as the representatives of both the former employers and former employees were in New York City working out a new contract. In my judgment a 'labor dispute'

exists as a result of a controversy over a then existing contract. . . .

"All the proof is that the contract expired March 31, 1939, and that the mines did not open the next day but remained closed until the new contract was agreed upon and approved by both the operators and their former employees. Then and not until then, dating from March 31, 1939, did they become the employees of the operators. I have, therefore, concluded that from midnight, March 31, 1939, until the adoption by the new contract, the relationship of employer and employee did not exist. . . .

"The majority opinion of the Board of Review held that the relationship of employer and employee terminated according to the terms and conditions of the contract. Having thus concluded in their opinion, and without any provision in the Act with reference to the indirect interest of the former employees, the majority Board of Review opinion should have concluded and held that 'no labor dispute' existed and should have held the claimants entitled to benefits during the period under the Unemployment Compensation Act."

These quotations, containing the gist of the opinion, show that the decision of the Court was rested primarily, at least, on the ground that "the relationship of employer and employee did not and could not exist as between these parties." And, "unless the relationship of employer and employee existed the Court is unable to see how, from any logical reasoning, that a 'labor dispute' existed." This conclusion is rested on the view that the definition of "labor dispute" is limited to situations where this relationship exists. We may concede this to be a correct limitation of the definitions generally, but the trial judge has overlooked and disregarded express language of our statute which extends the defini-

tion beyond this limitation and provides for its application to one whose unemployment is due to a labor dispute in progress at the establishment "at which he is *or was last* employed." Assuming, but not deciding that claimants' relationship of employees ended with the expiration of the contract at midnight of March 31st, language could hardly have been chosen by the Legislature more definitely to cover claimants' situation immediately following the cessation of work at these mines.

The word "dispute" is defined in Webster's International Dictionary as "verbal controversy, contest by opposing argument or expression of opposing views or claims; controversial discussion; debate;" etc. As thus defined there can be no doubt that a dispute, a difference, or disagreement existed between the parties as to the terms of a new contract.

Nor do we think that it can be denied that this dispute or discussion or controversy, which began about the middle of March and was continued between the chosen representatives of claimants and their employers until an agreement was finally arrived at about the middle of May, when a new contract for two years was made, was a labor dispute. Certainly, the controversy altogether concerned the terms and conditions upon which labor was to be performed. The dispute was wholly with respect to matters relating to such labor, and we are unable to reach any other conclusion than that a labor dispute was in active progress throughout the period here involved touching the continuation or resumption of work at the premises at which each of these claimants "was last employed."

However, as we understand the particular contention made for claimants, it is that their unemployment was not "due to" this labor dispute, but was due

to the expiration of the two-year contract by which the parties had been governed at midnight on the 31st of March; that the cessation of work, quite apparently mutually agreed upon, was due to this lack of a new contract, and not to the dispute which was in progress between the representatives of the parties over the terms of a new contract.

Conceding this argument to be ingenious, we are unable to concede its soundness. The lack of a new contract was certainly due to this dispute. There can be no "dispute" about this and we can find no logical basis for recognizing this distinction—without a difference—as in any sense determinative. It comes to one and the same thing.

Since this cause has been pending on appeal to this Court, at least two of the Courts at last resort in the sister States of Alabama and Kentucky have construed statutes materially similar to ours and on facts not materially different have held that the claimants in those cases could not recover.

In Alabama the case of *Department of Industrial Relations* v. *Pesnell,* was decided by the Court of Appeals of Alabama on August 6th, 1940, and *certiorari* was denied by the Supreme Court of Alabama on November 28th, 1940, Rehearing denied January 23, 1941. The opinion of the Court of Appeals appears in 29 Ala. App. 528, 199 So., beginning on page 720, and contains a full review of the history and facts of that case, which are in all essential particulars the same as in the instant case. At 240 Ala., 457, 199 So. 726 in *Ex parte Pesnell,* appears a brief opinion written by Chief Justice GARDNER, of the Supreme Court of Alabama, denying *certiorari* and approving the opinion and decision of the Court of Appeals.

We quote the pertinent Alabama statute, which will be seen to be practically identical with our own: "An employee shall not be eligible for benefits for any week in which his total or partial unemployment is directly due to a labor dispute still in active progress in the establishment in which he is or was last employed." Gen. Acts Ala., 1935, p. 958, sec. 6(d).

We also quote pertinent excerpts from the opinion of the Court of Appeals [199 So., 724], which both as to the facts and conclusions stated apply here:

"Because of a failure to reach a new contract by midnight March 31, 1939, all bituminous coal mining in the Appalachian area ceased at that time. The Alabama operators having refused to sign a work-pending agreement, coal mining also ceased in Alabama at midnight on March 31, 1939.

.     .     .     .     .     .

"It is very clear that all parties thoroughly understood the position of the United Mine Workers was that work would cease in Alabama on the night of March 31st, unless a new contract with the Appalachian area was reached by that date, or a work-pending agreement containing the provisions above referred to was entered into by the operators and District No. 20.

"It would serve no good purpose, and would extend this opinion to an unreasonable length, to set out all of the proposals and counter-proposals of the United Mine Workers and the coal operators in their discussion about a new agreement for the Appalachian area. There is no mistake, or uncertainty, about the position of the United Mine Workers of America and District No. 20. It was as stated above.

.     .     .     .     .     .

"The evidence in this case makes it quite clear that the employees of the Tennessee Coal, Iron & Railroad Company, affiliated with the Union, would not work after March 31, 1939, until a new agreement for the Appalachian area had been consummated, unless the employer would execute a work-pending agreement containing the stipulation set out above.

"It is further clear from the testimony that bargaining agents of the appellee were insisting upon provisions in the new agreement for the Appalachian area that were not acceptable to the operators, and that the operators were tendering proposals that were not acceptable to the Union.

. . . . . .

"The naked fact is, appellee quit work during the time his agents were discussing the terms of a proposed contract with the management. The terms were a matter of controversy. Appellee was out of work because he was a party to a controversy over wages, hours and conditions of labor. That is a labor dispute."

The opinion concludes with the statement that "we see no escape from the conclusion that appellee [the claimant in that case] ceased work because of a controversy concerning terms or conditions of employment." The Court reversed the trial Court and rendered judgment against the claimant.

As before stated, the approving opinion of the Supreme Court is brief. We quote the following extracts therefrom, which are particularly pertinent:

"Our statute merely uses the words 'labor dispute' without further definition and with no indication whatever a strike or lockout must result. A 'dispute' is a verbal controversy. 'To contend in argument; discuss; debate; often, to argue, irritably; wrangle,' Webster's

New International Dictionary, Second Edition. There appears, therefore, no foundation for the argument that the words 'labor dispute' as used in the statute are to be interpreted as meaning a verbal controversy resulting in 'a strike or lockout,' to use the language of petitioner's brief. . . .

"Further criticism of the opinion of the Court of Appeals relates to the matter of reference to definitions of a labor dispute as found in the Anti-Injunction and Labor Relations acts of Congress. Title 29, U. S. C. A., sec. 113 and Title 29, U. S. C. A., sec. 152. But we do not construe the opinion as indicating any binding force or effect of these definitions so far as our own statute is concerned, but the citations are only by way of illustration, and so to be considered."

The language of the Kentucky Act, construed in *Barnes et al.* v. *Hall,* decided December 20th, 1940 (rehearing denied February 14, 1941), 285 Ky., 160, 146 S. W. (2d), 929, differs from ours in some particulars, but is similar in the material respect that it excludes from compensation one who is out of employment because of a labor dispute. It differs chiefly in that it expressly disqualifies the employee if his unemployment is due to a strike, and, on the other hand, provides that the disqualification shall not apply if his unemployment is due to a lockout. The Court found that the facts of that case did not show either a strike or a lockout, but did show a "bona fide labor dispute," and so finding denied recovery to the claimants in that case.

The opinion in the Kentucky case does not indicate that it was contended, as here, that no labor dispute existed, but that the unemployment was chargeable to conduct of the employers, which amounted to a lockout, rendering the unemployment involuntary. To this ques-

tion the opinion is largely devoted, holding that the closing down of the mines automatically followed from the failure to arrive at an agreement on a new contract, and that the unemployment was a necessary incident of this cessation of work pursuant to custom and mutual understanding. Such also was the situation presented in this record. Complaint of the application of this opinion to the instant case is made by counsel, with some degree of plausibility, because of its reliance in part upon the definitions of "labor dispute" given in the National Labor Relations Act, Section 2, Subsection 9, 29 U. S. C. A., sec. 152(9), and the Norris-LaGuardia Act, 29 U. S. C. A., sec. 113(c), referred to above in our quotation from the Alabama opinion. These substantially identical definitions read:

"The term 'labor dispute' includes any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, regardless of whether or not the disputants stand in the proximate relation of employer and employee."

The argument that the definitions given in these Acts of Congress are not applicable here appears to be founded mainly upon the inclusion therein of the concluding clause, "regardless of whether the disputants stand in the proximate relation of employer and employee."

While we have not rested our conclusion upon the definitions given in these Acts, and have gone no further than to regard them as illustrations, as suggested by the Supreme Court of Alabama, it would seem that the clause above quoted extending the application of these definitions beyond the relationship of employer and em-

ployees does no more, in effect, than does the inclusion in our own statute, and in that of Alabama, of the words hereinbefore stressed, extending the term "labor dispute" so as to include both those who are and those who were employees. It is true that our Act is not quite so broad as to disregard altogether this element of relationship, but it is distinctly broad enough to cover not only one presently in the relationship of employer and employee, but one who has last been in such relationship, although that relationship may have expired.

We are aware of no Court of last resort which has reached a conclusion at variance with the views we have herein expressed. The decree of the Chancery Court must be reversed and the bill dismissed.

DeHaven, J., dissents.

## Dissenting Opinion.

Mr. Justice DeHaven delivered a dissenting opinion.

This claim involves the claim of several thousand coal miners, members of the United Mine Workers of America, District No. 19, for unemployment compensation benefits under the terms of the Tennessee Unemployment Compensation Law, being Chapter 1, Public Acts 1936, First Extraordinary Session, as amended, Laws 1937, c. 128, Pub. Laws 1939, c. 131. Michie's Tennessee Code 1938, sections 6901 (1) to 6901(21). These claims are resisted by the Block Coal and Coke Company and other coal operators, employers of the coal miners involved.

The determinative question in the case is whether or not a "labor dispute" within the meaning of section 5(d) of the statute existed between the complainants and the coal operators from and including April 1, 1939, to May 8, 1939. If such dispute existed, then the claimants,

under the terms of the statute, are not entitled to the benefits sought.

The Commissioner of Labor of Tennessee held the claimants entitled to the benefits sought. On appeal, the Board of Review, by a two to one decision, held claimants are not entitled to such benefits because their unemployment was the result of a "labor dispute." On *certiorari* to the chancery court by claimants, the chancellor held and decreed that there was no material evidence supporting the holding of the Board of Review that there was a "labor dispute" and allowed compensation. From this decree the coal operators have appealed to this court and assigned errors.

The Southern Appalachian Coal Operators' Association is a voluntary association of corporations (including appellant employers) owning and operating mines for the production of coal in East Tennessee and certain parts of Eastern Kentucky. The United Mine Workers of America is a voluntary unincorporated association of individuals employed in the mining of coal. On April 2, 1937, the Southern Appalachian Coal Operators' Association and a number of like associations entered into a written contract with the United Mine Workers of America to continue in effect to March 31, 1939, which contract according to its terms governed all the conditions of employment relations between the coal operators and the coal miners. The contract provided that "A joint conference of representatives of (naming the various coal operators' associations signatories to the contract) and the International Union United Mine Workers of America, and Districts . . ., 19, . . ., shall be held in the City of New York, N. Y., March 14, 1939, to consider what revision, if any, shall be made in the Agreement as to hours, wages and conditions of em-

ployment.'' Pursuant to this provision of the contracts a committee selected by all of the coal operators, including appellant employers, met in New York City on the day designated with a number of representatives of the United Mine Workers of America. At the meetings of the two committees, both the operators and the United Mine Workers submitted a number of proposals for changes which they desired in the revision of the contract. Negotiations did not cease on March 31st, the day the contract terminated. On the contrary, negotiations for a new contract continued, almost continuously, through May 8th, when an agreement was reached.

With the expiration of the contract at midnight, March 31st, claimants' employment thereunder ceased. They became unemployed individuals pending the negotiations of a new contract.

Section 4 of the Unemployment Compensation Law provides the conditions under which unemployed individuals shall be eligible to receive benefits. Claimants, under the conditions set out, are entitled to the benefits provided for in section 4, unless they are excluded therefrom by the provisions of section 5(d) which is alone relied on by appellants. Subparagraph (d) of section 5 reads as follows: ''(d) For any week with respect to which the Commissioner finds that his total or partial unemployment is due to a labor dispute which is in active progress at the factory, establishment, or other premises at which he is or was last employed, provided, that this subsection shall not apply if it is shown to the satisfaction of the Commissioner that,''—(Then follows numbered paragraphs 1, 2, and 3 which are not material to this controversy.)

The United Mine Workers of America was the sole bargaining agent representing the employees of appel-

lant employers, within the meaning of the National Labor Relations Act, 29 U. S. C. A., Sec. 159(a). The contract of 1937 provided that representatives of the coal operators and the United Mine Workers should meet in New York City to consider what revision, if any, of the contract should be made. While the contract expired on March 31, no limitation of time was placed on the negotiations for a new contract. The joint conference, notwithstanding the termination of the contract, continued its session after April 1st in an effort to reach an agreement as to the terms of a new contract, between the parties. It cannot be successfully maintained that the negotiations for a new contract, provided for in the old contract, constituted a "labor dispute." To hold that the method adopted by the parties to avoid a labor dispute, itself constituted a labor dispute would be to condemn collective bargaining and strike down all efforts to arrive at satisfactory terms of employment by negotiation. It is not insisted by appellants, as we understand it, that the negotiations carried on from March 14th to March 31st constituted a labor dispute. The argument is that the negotiations carried on after March 31st, by consent, constituted a labor dispute. It is difficult to understand that that which was not a labor dispute prior to midnight March 31st was immediately thereafter metomorphized into a labor dispute by the prolongation of negotiations by consent. The continued negotiations by consent was as effective to prevent the negotiations from being classed as a labor dispute as was the original agreement for the joint meeting to negotiate a new contract. If the original agreement for negotiations was not a labor dispute, neither was the subsequent negotiations carried on by consent. The continued effort on the part of the employees to obtain a contract under which they could be

employed was not a strike, and the like effort on the part of the operators was not a lockout. It is difficult to conceive of a labor dispute leading to unemployment save through strike or lockout. It is conceded that the operators did not lock out their employees, and it must be conceded that the employees did not strike.

Upon the expiration of the old contract under which the miners were employed, all contractual relations between them and the operators ceased. The operators were left free to close their mines and the miners were left free to look for employment elsewhere, or to seek re-employment by the operators under a new contract. The situation was the same as though the relation of employer and employee had never existed between the operators and the miners. But, it is argued that a labor dispute existed at the mines where they were *"last employed."* This is a begging of the question, for it is assumed that a labor dispute existed—the very question at issue. Under section 5(d) the employer is excluded from benefits if his unemployment "is due to a labor dispute which is in active progress at the factory, establishment, or other premises at which he is or was last employed." By the language thus employed, the Legislature clearly *localized* where the labor dispute must be in active progress in order to disqualify the employee from benefits under the Act. The language quoted must be accorded its usual and ordinary meaning. It must be taken to mean what it says. The true meaning and import of the language used is, I think, that the disqualifying labor dispute must be at the place of employment and in the nature of some sort of labor activity, such as a strike, on the part of the employees, or a lockout on the part of the employers. But, it is argued that the negotiations for a new contract of employment was a "labor dispute"

and was, in effect, being carried on at the mines. This insistence is, I think, utterly fallacious.

It seems perfectly clear that claimants ceased work on April 1, 1939, because they had no working contract with the appellants, and not because of any labor dispute in active progress. Claimants were not, therefore, disqualified from receiving benefits under the Tennessee Unemployment Compensation Law.

The Act here in question is highly remedial (see section 2) and should be given a liberal construction in order to effectuate the objects sought to be attained, instead of a strained, narrow and super-technical construction resulting in a defeat of these objects of social benefit.

For the reasons stated herein, I feel constrained to dissent from the majority opinion. The decree of the chancellor ought to be affirmed.