James Harvey Bailey et al., Appellants,

*v.*

Tennessee Department of Employment Security, L. B.
Jennings in His Official Capacity as Commissioner of
Employment Security for the State of Tennessee,

and

Jefferson City Cabinet Company, Appellees.

370 S. W. 2d 492.

(*Knoxville,* September Term, 1963.)

Opinion filed September 11, 1963.

RICHARD R. FORD, Knoxville, MORGAN C. STANFORD, Atlanta, Ga., DUNCAN & FORD, Knoxville, and ADAIR, GOLDTHWAITE & STANFORD, Atlanta, Ga., of counsel, for appellants.

W. L. MOORE, Chief Counsel, Nashville, W. D. DODSON, Assistant Chief Counsel, Nashville, for Tennessee Department of Employment.

N. R. COLEMAN, JR., Greeneville, MILLIGAN, SILVERS & COLEMAN, Greeneville, of counsel, for appellees.

MR. JUSTICE HOLMES delivered the opinion of the Court.

This is an appeal by the complainants from a decree of the Chancery Court of Jefferson County which dismissed the petition for certiorari filed in that Court by appellants. This petition for certiorari sought to review a decision of the Board of Review of the Department of Employment Security which had denied the appellants'

claims for unemployment compensation on the ground that they were disqualified because their unemployment was due to a labor dispute in active progress at the time covered by the claims of the appellants.

The record shows that the Jefferson City Cabinet Company owns and maintains manufacturing facilities at Jefferson City, Tennessee. On February 7, 1961 there was in existence between the Company and Local 748 of the International Union of Electrical Radio and Machine Workers AFL-CIO a collective bargaining agreement which constituted the local union as the recognized bargaining agent for the appellants as employees of the Cabinet Company. On that date a dispute arose between the employees and the Jefferson City Cabinet Company which resulted in approximately 200 of the appellants walking off their jobs and setting up a picket line. The remaining appellants, approximately 600 in number, refused to cross the picket line and did not return to work on February 8, 1961. A few days later an injunction was issued which limited the number of pickets to one.

By letter dated February 13, 1961 the 200 employees who had walked off the job on February 7th were notified that they were discharged by the Cabinet Company. On receiving this notice of discharge, these appellants made application for unemployment benefits. By letter dated March 21, 1961 the remaining appellants were notified of their discharge by the Cabinet Company and these appellants then made application for unemployment benefits. The Cabinet Company continued to operate its plant, hiring new employees, and in August 1961 normal production was achieved.

The picketing of the Jefferson City Cabinet Company's plant continued until mid-October 1961. All of the appel-

lants participated in the labor dispute which brought about their total unemployment and all belonged to the same grade or class of workers which participated in the strike and none of the claimants unconditionally offered to return to work.

The initial determination of the Tennessee Department of Employment Security was that the appellants were disqualified for unemployment benefits on the ground that the unemployment of the appellants was due to a labor dispute in active progress within the meaning of T.C.A. sec. 50-1324(D). Appeals from this ruling were taken by the appellants which were consolidated for a hearing before the Board of Review on September 21, 1961. The Board of Review first reversed the decision of the Commissioner and held the appellants were entitled to benefits from the date of their claim. An application for a rehearing was filed by the employer, which was granted, and the matter was further heard before the Board of Review on December 8, 1961. Following this hearing, the Board of Review rendered its findings, which are in part as follows:

"In the case at bar the labor dispute arose on the seventh day of February 1961, the company continued to operate, hiring a full staff of employees to fill the places left vacant by striking employees, who are claimants in this case. The letters of discharge were sent out as shown in the original decision, however, the record contains no evidence of action on the part of the bargaining unit or the individual claimant to end the dispute by positive action on their part or by offering to return to work and no testimony was offered in behalf of claimants to the effect that the labor dispute had ceased."

The Board of Review reversed its former decision and denied the appellants' claims "from the date of filing under Section 50-1324(D) of the Code of Tennessee."

The record further shows that on August 12, 1961 the union, which was the bargaining agent of the appellants, filed a suit against the employer in the United States District Court at Knoxville seeking arbitration of the dismissal of appellants. The record indicates this suit is still pending in that Court. Also, the union filed unfair labor practice charges with the National Labor Relations Board which were dismissed.

The scope of judicial review of the decision of the Board of Review is set forth in T.C.A. sec. 50-1325(I) as follows:

"In any judicial proceeding under this section, the findings of the board of review as to the facts, if there be any evidence to support the same, shall be conclusive and the jurisdiction of said court shall be confined to questions of law."

In view of this statute the question for determination by this Court is whether or not under a proper construction of our Employment Security Law, T.C.A. secs. 50-1301—50-1358, there is any evidence to support the findings of the Board of Review that the appellants were disqualified for benefits by reason of the provisions of T.C.A. sec. 50-1324(D). This Code Section provides:

"An individual shall be disqualified for benefits: * * *

"D. For any week with respect to which the commissioner finds that his total or partial unemployment is due to a labor dispute which is in active progress at the factory establishment, or other premises at which he is or was last employed".

With respect to this question, it is the contention of the defendants that the labor dispute continued to be in active progress at all relevant times and that the unemployment of appellants is due to this labor dispute. On the other hand, it is the contention of the appellants that from the date of the notices of the discharge by the employer, as a matter of law, the unemployment of these appellants ceased to be due to a labor dispute in active progress and became due to their discharge by the employer.

In support of their contention, appellants strongly rely upon the case of *Milne Chair Company v. Hake,* 190 Tenn. 395, 230 S.W.2d 393. The facts in that case are that on April 21, 1947, for an asserted grievance, 157 employees left their jobs and formed a picket line around the employer's plant. This picket line was maintained through the time of the hearing of the claims by the Board of Review. All of these employees were members of a union which was their bargaining agent. At a meeting on April 23 between the representatives of the company and the union, the union proposed ''that the workers be returned to their jobs and that the difficulty be arbitrated.'' The company took the position ''that the contract had been broken by the employees walking out and that it considered that they were no longer its employees.'' On April 28 another meeting between the company and the union was held. In that meeting the union proposed ''that both sides should forget everything that happened and put the people back to work''. The company at that time continued its position that these people were no longer its employees. On May 26 the employees who had walked off of the job on April 21 filed claims for payment of unemployment benefits. The evidence as to the facts was not contradicted.

The Board of Review in that case found that these employees became involuntarily unemployed on May 20, 1947 and held that they were not disqualified for benefits under T.C.A. sec. 50-1324(D).

The Court, in the Milne Chair Company case, at this point of its opinion, stated:

"Accordingly, the conclusion of the Board of Review was that the unemployment of these people was attributable to their dismissal by the company for breaking their contract rather than to a labor dispute."

The Court then pointed out that the ruling of the Board that a labor dispute could not exist in the absence of an employer-employee relationship was erroneous, stating:

"However, the relationship of employer-employee is not a prerequisite to the existence of a labor dispute in the application of our Employment Security Act. *Block Coal & Coke Co. v. United Mine Workers,* 177 Tenn. 247, 148 S.W.2d 364, 149 S.W.2d 469."

The Court then reviewed the decision of an Oklahoma case in which the facts were quite similar to the facts in the Milne Chair Company case and in which there was a difference of opinion among the members of the Oklahoma Court. Then the Court, in the Milne Chair Company case, stated:

"The disagreement between the members of the Oklahoma Court of last resort seems to *establish it as a fact* that reasonable men may and do sincerely disagree as to *whether a labor dispute is the cause* of the unemployment of the laborer under facts practically equivalent to those presented by this record. That being the situation, we cannot say that the decision of the Board

of Review is not supported by substantial evidence.'' (Emphasis supplied)

The Court then discussed the scope of review in cases of this character and stated:

''This Court, therefore, concludes that there is in this record substantial evidence in support of the Board's finding that the unemployment of these appellees was due to their dismissal rather than to a labor dispute.''

In the Milne Chair Company case the Court simply held that on the facts presented in the record in that case reasonable minds could differ as to whether the unemployment of the claimants was *due to* a labor dispute in active progress or *due to* the discharge of the claimants by the employer. The statute T.C.A. sec. 50-1325(I) makes the decision of the Board of Review as to the facts and inferences to be drawn from facts the equivalent of a jury verdict. The law did not compel a decision one way or the other in the Milne Chair Company case since reasonable minds could differ as to the cause of the claimants' unemployment under the undisputed facts in the record. In that case the bargaining agent of the claimants had offered to ''forget everything that happened and put the men back to work''. The company refused that offer, stating claimants were no longer its employees. This constituted an application for re-employment, which, as stated in *Special Products Company v. Jennings,* 209 Tenn. 316, 318, 353 S.W.2d 561, ''is a prerequisite of obtaining unemployment benefits.''

Under the facts of the Milne Chair Company case, the finding of the Board as to the cause of the unemployment of claimants had ''warrant in the record'' and a ''reasonable basis in law''. Under our statute T.C.A. sec. 50-1324

(D), the unemployment must be *due to* the labor dispute in order to disqualify the claimant for benefits. The cause of the unemployment is the question. If, from the facts in the record, reasonable minds could differ as to the cause of the unemployment, then the decision of the Board is final. The rule is analogous to the rule relating to motions for directed verdicts in jury cases. This rule has been stated by the Court in the following language:

"This Court has concluded that the evidence is such that reasonable minds might draw different conculsions as to whether the answer to those issues should be in the affirmative or the negative. In reaching this conclusion, the Court has given effect also to the elementary rule that (1) if there is any reasonable doubt as to the conclusion to be drawn from the whole evidence upon the controlling issue, then the matter should be decided by a jury". *McCaleb v. American Insurance Company,* 205 Tenn. 1, 8, 325 S.W.2d 274.

See also *Schindler v. Southern Coach Lines, Inc.,* 188 Tenn. 169, 175, 217 S.W.2d 775; *Poe v. Atlantic Coast Line Railroad,* 205 Tenn. 276, 284, 326 S.W.2d 461, and cases cited therein.

That this same rule is applicable to conclusions drawn from evidence by administrative boards under statutes similar to Employment Security Act is clearly stated in 73 C.J.S. Public Administrative Bodies and Procedure sec. 221, Page 583 et seq. An interesting discussion of the scope of judicial review of administrative action in Tennessee is found in 23 Tennessee Law Review, 349, specially Pages 361-367.

In the case at bar, there is no doubt as to the fact initially appellants' unemployment was due to a labor

dispute in active progress at the factory. The notices of discharge did not terminate this labor dispute under our statute, for in *Milne Chair Company v. Hake,* supra, and *Block Coal & Coke Company v. United Mine Workers,* 177 Tenn. 247, 148 S.W.2d 364, 149 S.W.2d 469, it was held that the labor dispute continued after a termination of the employer-employee relationship. The issues in dispute in the case at bar had not been resolved finally when the record in this case was made. The effect of the discharge notices is the subject of continuing litigation in the Federal Court. Neither the bargaining agent of appellants nor any of the appellants individually have unconditionally offered to return to work. No notice of a termination of the strike has been given the employer. As found by the Board of Review, "No testimony was offered in behalf of the claimants to the effect that the labor dispute had ceased." Picketing continued until mid-October.

■ The fact that during the period following the discharge notice of February 13, 1961 to 200 of appellants none of the 600 other appellants who did not then receive discharge notices offered to return to work affords ample evidence that the labor dispute and not the discharge notices was the cause of the appellants' unemployment during this period. There is nothing in this record to indicate that the 600 appellants who received discharge notices on March 21, 1961 would have returned to work but for such notice. The Board of Review was fully justified in concluding that the labor dispute continued to be the cause of appellants' unemployment in the absence of "evidence of action on the part of the bargaining unit or the individual claimant to end the dispute by

positive action on their part or by offering to return to work".

■ This finding by the Board of Review is in conformity with the holding of this Court in *Special Products Company v. Jennings,* supra, wherein it was stated that an offer to return to work is a prerequisite to the obtaining of benefits. The Special Products Company case held that once the dispute had ended and the claimants had unconditionally offered to return to work, if their jobs had been filled and there was no work available, then they became entitled to benefits from that time as a matter of law. The Court does not inquire into the merits of a labor dispute in a proceeding under T.C.A. sec. 50-1301 et seq. The above stated rules were applied by the Court in *Davis v. Aluminum Company of America,* 204 Tenn. 135, 316 S.W.2d 24.

We have read with interest the cases from other jurisdictions cited in the briefs of the respective parties but find it unnecessary to refer to them in this opinion because we have concluded that prior decisions of this Court control the disposition of the questions raised by this appeal.

The appellants' assignments of error are overruled and the decree of the Chancery Court dismissing the writ of certiorari is affirmed at appellants' cost.