**IMPERIAL FOODS, INC.**

v.

**Evelyn McQUAID and James Davenport, Commissioner of the Tennessee Department of Employment Security.**

Court of Appeals of Tennessee,
Middle Section,
at Nashville.

Nov. 17, 1993.

Permission to Appeal Denied by
Supreme Court March 28, 1994.

Charles W. Burson, Atty. Gen. and Reporter, Jennifer H. Small, Deputy Atty. Gen., Michelle L. Lehmann, Legal Asst., Nashville, for defendant-appellee.

Dan R. Alexander, Nashville, for petitioner-appellee.

Lesa H. Skoney, Tune, Entrekin & White, P.C., Nashville, for respondent-appellant.

## *OPINION*

LEWIS, Judge.

This is an appeal by the respondent, Evelyn McQuaid (employee), from the judgment of the Chancery Court reversing the decision of the Board of Review of the Tennessee Department of Employment Securities that the employee was entitled to unemployment compensation.

### THE CASE.

The employee, Evelyn McQuaid, filed an initial claim for unemployment compensation on 24 February 1992 with the Tennessee Department of Employment Security. On 9 March 1992 her claim was disallowed without a hearing pursuant to Tennessee Code Annotated § 50–7–303(a)(1).

The employee filed an appeal to the Appeals Tribunal. A hearing was held on 1 April 1992 at which time the employee was represented pro se, and the employer was represented by two of its managers, Ellen Buska and Cindy Hannah. The Appeals Tribunal reversed the agency's initial disallowance of unemployment compensation benefits

and approved the employee's claim for benefits after finding that the employee had not voluntarily quit her employment, but had been discharged while she was on medical leave. The Appeals Tribunal further found that an offer to the employee to "reapply" for a new position was not an offer of work. The Appeals Tribunal also found there was insufficient evidence offered by the employer to establish misconduct under Tennessee Code Annotated § 50–7–303(a)(2) and that the problems the employee experienced with her work were related to her medical condition.

The petitioner/appellee, Imperial Foods, Inc. (employer) then filed an appeal to the Board of Review. A hearing was held on 9 June 1992 at which time both the employer and the employee were represented by counsel, and each offered additional testimony. The employer offered the testimony of Mr. Bobby Spivey, President of the employer, and the employee offered the testimony of the employer's Personnel Manager, Cathy Culver. The Board of Review affirmed the decision of the Appeals Tribunal in a written opinion dated 3 August 1992. The Board of Review found that the employee was discharged from her work and made a further specific finding that the employer made no offer of employment, nor did the employer promise Ms. McQuaid employment. The Board of Review further found that the evidence presented by Mr. Spivey of misconduct was insufficient to deny the employee's claim under Tennessee Code Annotated § 50–7–303(a)(2).

The employer then filed a petition for a writ of certiorari for review of the decision of the Board of Review in the Chancery Court for Rutherford County. The employee was not represented by counsel; however, the Commissioner of the Tennessee Department of Employment Security was represented by counsel and defended the Department's decision. The Chancellor filed a Memorandum Opinion on 28 April 1993 in which he reversed the Department of Employment Security's decision. The Chancellor found that the employer had intended to make a position available to the employee and that because the employee applied for unemployment compensation before contacting the personnel office to inquire about the positions for which she could apply, she in effect voluntarily quit her employment. A Final Order was entered on 17 May 1993 denying the employee unemployment compensation benefits.

The employee then filed a notice of appeal to this court.

## THE FACTS.

The employee, who was employed with the employer for some four (4) years beginning in May, 1990 and concluding on 21 February 1992 as a cash and deposit clerk in the accounting department, had an approximate six (6) month break in her service.

The employee began experiencing health problems in early 1992. These problems prevented her from performing a job that required either standing or heavy lifting and ultimately required the employee to have surgery in April 1991. Her medical condition and doctor's appointments are documented in the record, and they include pelvic pain, endometriosis, kidney infections, a bladder infection, and possible appendicitis problems. The employee was granted a one (1) week medical leave by her employer in February 1992.

Her medical condition affected her work performance. The employee also had a problem with her employer over a shortage in her paycheck. After her termination, employer sent employee her separation notice and the amount she was shorted on her paycheck.

The employee had an incident some years prior to her termination where a cash deposit she had counted was thirty cents in error. She was told by her supervisor, Kathy Hannah, that they would adjust the books the following day.

While employee was home sick on medical leave, she was called in for a meeting with her supervisor on Friday, 21 February 1992 at 3:30 p.m. She came to the office as directed and was told by Mr. Spivey, the President of respondent Imperial Foods, that she no longer had a job in the Accounting Department, but that she was "welcome" to "reapply" for any job that might be open on the following Monday with the personnel office

director. Mr. Spivey did not know if there were any jobs open, or if so, which jobs were available at the time. It was the employee's understanding at the meeting that her job in the Accounting Department was terminated. On the following Monday morning, the employee went to the Murfreesboro office of the Department of Employment Security and spoke to Gerrie Hughes, who told her that she did not have to reapply for another job with her same employer in order to receive unemployment benefits, but that she needed to bring in copies of her medical records from her doctors. The employee spent most of the day Monday getting copies of her medical records; therefore, she did not have time to go back to her employer and apply for another job on that Monday.

On Tuesday, 25 February 1992 the employee telephoned the employer's Personnel Office and spoke to Cathy Culver, Personnel Director. Ms. Culver had not been told to make any particular position available to the employee on Monday. She was aware of only one job opening and it was in production. Ms. Culver advised the employee that the only job openings for which she could apply were in production. A production job is essentially a meat packing job where one has to work in temperatures of approximately thirty-six degrees and pack raw meat and chicken into packages. This position is an entirely different job classification from the job in the Accounting Department and paid less than the employee's former job as a cash receipts clerk. The employee could not do a job that required standing and heavy lifting because of her medical condition. She did not reapply for a job with her employer. The employee was educated and trained in accounting and did not apply for the job as a meatpacker because she wished to continue in the same line of work in which she had been previously employed.

■ The employee's first argument is that "the Chancellor erred by substituting his own judgment as to questions of fact in violation of Tennessee Code Annotated § 50–7–304(i)(2), which provides, in part:

(2) The chancellor may affirm the decision of the board or the chancellor may reverse, remand or modify the decision if the rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions or decisions are:

(A) In violation of constitutional or statutory provisions;

(B) In excess of the statutory authority of the agency;

(C) Made upon unlawful procedure;

(D) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or

(E) Unsupported by evidence which is both substantial and material in the light of the entire record.

(3) In determining the substantiality of evidence, the chancellor shall take into account whatever in the record fairly detracts from its weight, but the chancellor shall not substitute the chancellor's judgment for that of the board of review as to the weight of the evidence on questions of fact. No decision of the board of review shall be reversed, remanded or modified by the chancellor unless for errors which affect the merits of the final decision of the board of review

. . . .

(4) . . . An appeal may be taken from the judgment and decree of the chancery court having jurisdiction of these controversies to the court of appeals of Tennessee, in the same manner, but not inconsistent with the provisions of this chapter, as provided in other civil cases."

Tenn.Code Ann. § 50–7–304 (Supp.1993).

The Board of Review filed its findings of fact which are as follows:

**FINDINGS OF FACT:** The claimant's most recent employment prior to filing this claim was as a cash receipts clerk for Imperial Foods Inc, Smyrna, Tennessee from May 7, 1990 until February 21, 1992, when she was discharged. The president of the company was dissatisfied with the claimant's work performance. On Friday, February 21, 1992, he informed her that she could no longer work in the capacity of cash receipts clerk. He also told her that she could report to the company the following Monday and apply for any other position that was available. The claimant

did not report on Monday, but on Tuesday, she called the personnel manager and asked what jobs were available. The only job the personnel manager knew about was in production as a meat packer. The claimant was educated in accounting. She did not apply for the meat packer's position because she wished to continue in the same line of work in which she was previously employed.

This finding of fact conforms to the findings of the Appeals Tribunal.

To determine this case we must make a factual determination of what transpired at a meeting between the employee and the president of her employer, Imperial Foods on Friday, 21 February 1992. If the employee was discharged from her position because of her employer's dissatisfaction with her work, she would be eligible for unemployment insurance benefits. However, her employer argues that she was discharged for misconduct connected with her work. The employer argues in the alternative that the employee was reassigned to a new position in the company, and instead of reporting for reassignment, she applied for unemployment benefits on the day she was to report for reassignment. The employer further argues that the employee therefore voluntarily quit and is ineligible for unemployment benefits.

Neither the Board of Review nor the Appeals Tribunal made any factual findings that the employee was told that she was being reassigned or to report for reassignment. This terminology is unsupported by any evidence in the record. However, the Chancellor in reviewing the Board of Review's decision, found that:

> the employer directed the claimant to contact the Personnel Director on Monday, that the employer intended to make a position available to the claimant that she was able to do, and that the claimant, assuming that she would only be offered a production job at a lower wage, voluntarily chose not to report when directed to do so.

The standard of judicial review provided in Tennessee Code Annotated § 50–7–304(i)(3) limits the Chancellor's authority as follows: "In determining the substantiality of evidence, the chancellor shall take into account whatever in the record fairly detracts from its weight, but the chancellor shall not substitute the chancellor's judgment for that of the board of review as to the weight of the evidence on questions of fact." Tenn.Code Ann. § 50–7–304(i)(3) (Supp.1993).

Here the Board weighed and based its findings of fact on the evidence in the record. The testimony of the employee was that she was offered an opportunity to reapply for a job, but was not offered a job. The President of the employer testified that he told the employee that she was "welcome to come in on Monday, February 24 and interview with Cathy Culver, our Personnel Administrator, for any other open positions that were available." He further testified: "At that time I did not know what was open or what was pending.... I felt like she had an opportunity and an invitation to come back on Monday." In his letter to the employee after her termination, he stated: "[W]e have to assume that since you have not accepted the invitation afforded you to interview with our personnel manager for other job openings within our company, that you have elected to refuse any further job openings that we would have available and quit any association with Imperial Foods." The Board of Review's finding that the employee was never reassigned and never offered a job or promised a job is supported by evidence in the record. The evidence in this record shows that the employee had been terminated, but that she was welcome to reapply and to interview for any available job openings. However, even if she had shown up on Monday to reapply, there was no guarantee that she would get a job. The employee was terminated from the payroll as of Friday, 2 February 1992. Neither Mr. Spivey nor anyone else with the employer communicated to the employee that she was being reassigned or that she was being offered a new position. The evidence fully supports appellant's contention that she had every reason to believe that she was being fired, but could have applied for a new job with the company like any other person by making an application to the Personnel Department.

■ If, from the facts in the record, reasonable minds could differ as to the cause of

the unemployment, then the decision of the Board is final. *Bailey v. Tennessee Dept. of Employment Security*, 212 Tenn. 422, 370 S.W.2d 492, 495 (1963).

In *Cawthron v. Scott*, 217 Tenn. 668, 400 S.W.2d 240, 242 (1966), the court held:

> To sustain the Board of Review's application of the provision in the statute under consideration, "we need not find that its construction is the only reasonable one or even that it is the result we would have reached had the question arisen in the first instance in the judicial proceedings. The 'reviewing court's function is limited.' All that is needed to support the commission's interpretation is that it has 'warrant in the record' and a 'reasonable basis in law.' "

*Id.* at 242 (citations omitted).

■ The Chancery Court seems to rely heavily on an assertion by the employer's president that he *intended* to make a position available to the employee. Nothing else in the record corroborates this statement, and the record does not show that it was ever communicated to the employee. The Board of Review and the Appeals Tribunal, the triers of fact, heard this testimony and weighed the credibility of the witnesses and found to the contrary. Even if the statement was true, it was never communicated by Mr. Spivey to the employee. The Board concluded that "[t]he employer did not transfer or reassign the claimant to any other specific job.... The employer made no offer, nor did he promise the claimant that he would make one." The evidence is clear that the employee was never told that a position would be made for her. Employer's president merely told employee that she was welcome to come in and interview for any other open positions.

We are of the opinion that the Chancellor substituted his judgment of the facts for that of the Board of Review by making a finding that the President "intended" to make a position available. This finding is a factual finding better left to the trier of fact, in this case, the Board of Review, who observed the witnesses' demeanor and credibility and whose job it was to decide the credibility of this uncorroborated assertion. The Chancellor, in his opinion, goes so far as to put words in the President's mouth finding that the company president directed the employee to report on Monday when the company president consistently testified that he told her she was "welcome to reapply". Furthermore, in his letter to the employee, the President acknowledged that she had not accepted his "invitation" to "interview". The employee was never directed to do anything because she was no longer an employee of Imperial Foods after her termination on Friday, 21 February 1992.

If the President had intended to retain the employee, he could have directed her to report for work, but so far as the record shows, he did not. She was invited to reapply for a position for employment. The Chancellor's reversal of the Board's findings is not supported by the record, and Mr. Spivey's directions are not found in this record. The Chancellor also found that Mr. Spivey was "planning to make opportunities available for [the employee] in another department outside of the production area, had [the employee] come in." Based on this assertion, the court substituted its judgment for the judgment of the Board of Review, in violation of Tennessee Code Annotated § 50–7–304(i)(3). The burden was on the employer in this case, and it had opportunities at both the Appeals Tribunal and Board of Review's hearings to present witnesses and evidence that Ms. McQuaid was being reassigned and not fired. However, the employer did not present a scintilla of evidence other than the company president's assertion of his intent, that the employee was merely being reassigned.

It is irrelevant whether the company president was planning to make opportunities available to the employee, unless he communicated those intentions to her in the form of a job offer. There is substantial evidence in the record that he did not communicate his intentions; this evidence is in the form of the President's own testimony, the employee's testimony, and the personnel manager, Cathy Culver's testimony.

The Chancellor relies heavily on the fact that the employee went to the Unemployment Office on Monday rather than apply for a new job with her previous employer. The

employee testified that she did not know what to do and asked Gerrie Hughes, an employee of the Unemployment Claims Office, what she needed to do. The employee was advised that she did not have to reapply with her former employer to be eligible for benefits, and presuming the case to be one of an employee being fired for medical or health reasons, Hughes advised her to bring in copies of her doctor and medical records. It is undisputed in this record that the employee was terminated while she was on medical leave. The employee gathered her records all day Monday, and once she finished that task it was too late to go by Imperial Foods. However, she called the next day to inquire about the positions for which she could apply.

When the president of the employer company was informed that the employee had called to inquire about job openings and had been advised that the meatpacker job was the only one open, he did not have the personnel director call the employee, nor did he call the employee himself to tell her that he was planning to make opportunities available in other departments to her.

The record fully supports the finding that the employer was dissatisfied with employee's job performance which, according to the record and by the employee's own admission, had gone down hill as a result of her medical problems and that she was fired as a result of the dissatisfaction.

This issue is sustained.

■ The employee's second issue is "whether the Chancery Court erred by not considering whether a refusal to apply for a position as a meatpacker by an employee of the Accounting Department, after her position in the Accounting Department was terminated, is a 'refusal to accept suitable work when offered' under Tennessee Code Annotated § 50–7–303(a)(3) sufficient to deny a claim for unemployment."

The record does not support a finding that the employee refused an offer of "suitable work" pursuant to Tennessee Code Annotated § 50–7–303(a)(3). The evidence in this record is that there was a position available as a meatpacker and that the employee's refusal to apply for it was entirely justified.

This position was not employment which was fitted to an employee with Ms. McQuaid's experience and education, particularly because of her medical problems. The record shows she could not perform a job requiring standing and lifting. This job as a meatpacker required not only standing and lifting, but working in a freezer in thirty-six degree temperatures while packing raw meat and chicken. The evidence is that the meatpacking job paid less than her job in the Accounting Department. This is a factor to be considered in the definition of "suitable work". Tennessee Code Annotated § 50–7–303(a)(3) provides that the Commissioner shall consider the "degree of risk involved to [the employee's] health, safety and morals, [the employee's] physical fitness and prior training, [the employee's] experience and prior earnings, [the employee's] length of employment and prospects for securing local work in [the employee's] customary occupation," among other things in determining whether or not certain work was suitable for a claimant. See Tenn.Code Ann. § 50–7–303(a)(3) (Supp. 1993).

■ The officers or boards charged with the duty of determining whether work offered is suitable for unemployment compensation claimants, are given much latitude in making their determinations. *Aluminum Co. of America v. Walker,* 207 Tenn. 417, 340 S.W.2d 898, 901 (1960). Here the Board made a specific finding that the employee was educated in accounting and did not apply for the meatpacker position because she wished to continue in the same line of work. This finding of fact supports the legal conclusion that the employee did not refuse an offer of suitable work because the only position for which she could apply was in production as a meatpacker.

The Chancellor did not address this issue, and the record does not reflect that he considered it. The Chancellor disregarded the employee's attempt to reapply for a suitable position because she waited until Tuesday rather than Monday. If the employer showed that there was a job opening which was filled by someone else on Monday or that there was some detriment to the employer because the employee did not apply on Mon-

day, the Chancellor's conclusion would be understandable. However, the record does not show that there was any detriment to the employer. This issue is sustained.

 The employee's last issue is "[w]hether Ms. McQuaid was discharged from her employment for misconduct connected with her work and thus ineligible for unemployment benefits under Tennessee Code Annotated § 50–7–303(a)(2)."

The employer contends that if the court finds that the employee was fired, then she was fired for misconduct associated with her work and, therefore, ineligible for benefits. The record shows that the employee was terminated while she was on medical leave. Tennessee Code Annotated § 50–7–303(a)(1) provides "[n]o disqualification (for benefits) shall be made hereunder, however, if such claimant presents evidence supported by competent medical proof that such claimant was forced to leave such claimant's most recent work because such claimant was sick. . . ." Tenn.Code Ann. § 50–7–303(a)(1) (Supp.1993).

The employee was terminated while she was on medical leave. She could not perform her job for medical reasons, and, therefore, under the statute, she is entitled to unemployment benefits.

Here the employer relies on an incident that occurred months prior to the employee's termination when a cash deposit that the employee had counted was thirty cents out of balance. The employer used that incident as justification for her dismissal. Mr. Spivey, the President, labeled this event as a "falsified audit"; however, the record shows that this incident was not brought up in her conference on Friday, 21 February when she was terminated. This event did not even merit comment or explanation from the Board of Review which concluded that evidence of misconduct was insufficient to deny the claim.

By review of this record we are persuaded that the Chancellor erred in reversing the findings of the Board of Review and therefore that the judgment of the Chancery Court should be reversed and the cause remanded to the Chancery Court for entry of

an order affirming the decision of the Board of Review and awarding the employee unemployment benefits.

The costs are taxed to the petitioner/appellee, Imperial Foods, Inc. and the cause remanded to the Chancery Court for further, necessary proceedings.

TODD, P.J., and CANTRELL, J., concur.