IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
March 25, 2004 Session

RANDALL C. HAGY v. COMMISSIONER, TENNESSEE DEPARTMENT
OF LABOR AND WORKFORCE DEVELOPMENT and TENNESSEE
DISTRIBUTION, INC.

Direct Appeal from the Chancery Court for Sullivan County
No. 02-1743-1    Hon. John S. McLellon, III., Judge

FILED MAY 26, 2004

No. E2003-01685-COA-R3-CV

Employee was discharged from employment for refusing to follow orders. The Commissioner
denied employee unemployment benefits, and employee appealed to the Court which affirmed the
ruling of the Commissioner. On appeal to this Court, we affirm.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Chancery Court Affirmed.**

HERSCHEL PICKENS FRANKS, P.J., E.S., delivered the opinion of the court, in which  D. MICHAEL
SWINEY, J., and WILLIAM H. INMAN, SR. J., joined.

Randall C. Hagy, Bristol, Tennessee, *pro se.*

Paul G. Summers, Attorney General and Reporter, and
Warren A. Jasper, Assistant Attorney General, Nashville, Tennessee, for Appellee, Michael E.
Magill, Commissioner, Department of Labor and Workforce Development.

Jennifer P. Keller, Johnson City, Tennessee, for Appellee, Tennessee Distribution, Inc.

**OPINION**

This action involves the denial of unemployment compensation benefits to plaintiff,
Randall Hagy, following his discharge from employment with Tennessee Distribution, Inc. (TDI)
for refusing to follow instructions. Plaintiff filed a claim for unemployment benefits, and following

the Company's response the Department rendered a decision approving plaintiff's claim for benefits, stating that plaintiff quit when he could not perform the duties of the job due to his religious beliefs, and that the employer was unable to place him in another position where he would not come in contact with the objectionable material. The Department stated "This is considered a good work-related cause to quit, and is not disqualifying under Tenn. Code Ann. §50-7-303. Claim is approved."

The Company appealed to the Appeals Tribunal, and asserted that plaintiff could not have performed any other job within the company without handling the materials he found offensive. Mr. Whittlesey the Company's Labor Relations Manager, stated that the plaintiff had worked for the company for five years in various jobs, and that these inserts were often seen in the warehouse due to being dropped or scattered by employees who were handling them, and it was "really incredible" that plaintiff had only now chosen to object to the material. Whittlesey also stated that the Department's determination that plaintiff quit was incorrect, because plaintiff refused to quit and forced Whittlesey to terminate him for failing to follow instructions. Whittlesey stated that the plaintiff had "constructed a scenario of religious objection for the purpose of losing his employment and obtaining unemployment benefits to which he is not entitled", and that the plaintiff had recently filed a grievance through the union requesting reinstatement, and commented "Can he have genuine objections to the material if he is attempting re-employment in a business that exists for the purpose of distributing that same material?"

The plaintiff testified before the Tribunal that he found the inserts he had to pack in customers' orders to be offensive to his religious beliefs, and stated that he asked that those either not be put in, or that he be transferred to a different job where he did not have to handle them. He testified that he was told by Mr. Whittlesey that he could either do the job he was asked to do or resign or be terminated. Plaintiff testified that the inserts were advertisements for book, music, and movie distributors who sold media that promoted witchcraft, satanic worship, drugs, homosexuality, and violence. Plaintiff said he felt there were other jobs he could do that would not violate his beliefs, but he was not given the opportunity. He said that he did not have a problem packing a customer's order for pots and pans or a VCR or whatever, but he just did not want to pack the inserts. Plaintiff stated that at any point after the inserts were put in, he viewed the package as contaminated and did not want to handle them.

Plaintiff testified that he had only worked in packing for a short time, and had worked in packing at some previous point, but only for a short time. He testified the inserts were packed in envelopes, and he would not have known what was inside except that some fell out and he saw them when he was picking them up. He said that if these inserts had been on the floor of the warehouse before, he had never picked them up and looked at them, and that he had only been packing for 2-3 days when he saw these materials. He testified that he had previously worked as a lift truck operator, and made more money at that job, and would rather have that job back, and that he was moved to packing when the company went through a reduction in force.

Mr. Whittlesey stated the Company was paid to put these inserts into the packages,

and that the company sold some of these same products that were advertised, such as CD's, books, and Walt Disney videos and merchandise.[1] Whittlesey represented that the company sold lots of merchandise which would be the same as that promoted in the inserts which plaintiff found offensive. Whittlesey said that they could not move plaintiff to another position within the company where he would be guaranteed not to handle the offensive inserts, because practically every position handled them at some point, and that he could not simply reassign plaintiff because of the union contract and seniority provisions.

The Appeals Tribunal found that plaintiff objected to handling the advertising inserts based on his religious beliefs, but had not objected to handling similar items with the same objectionable material previously. The Tribunal found that plaintiff's objections were inconsistent, and that plaintiff was rightfully discharged for refusing to do his job, and his requests for accommodations were unreasonable. The Tribunal ruled that the grant of unemployment benefits would be reversed, and plaintiff was ordered to repay the benefits he had received to that date.

Plaintiff appealed that decision to the Board of Review, and the Board of Review affirmed the decision of the Appeals Tribunal. Plaintiff then filed a Petition seeking judicial review of his denial of benefits, and the Commissioner filed an Answer, averring that judicial review was available pursuant to Tenn. Code Ann. §50-7-304(I), but that the administrative record contained substantial evidence to support the decision of the Board of Review that plaintiff was discharged for misconduct.

The Trial Court entered an Order on June 6, 2003, noting that plaintiff had been denied unemployment benefits because the Department found that plaintiff committed worker misconduct pursuant to Tenn. Code Ann. §50-7-303(a)(2), and that this decision had been affirmed by the Board of Review. The Court reviewed the record and rendered findings and judgment, and observed that there were "very limited" grounds upon which the Court could alter or reverse the decision of the Board of Review. Pursuant to Tenn. Code Ann. §50-7-304(2), and could only reverse or modify the decision if "the rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:

> (A) In violation of constitutional of statutory provisions;
> (B) In excess of the statutory authority of the agency;
> (C) Made upon unlawful procedure;
> (D) Arbitrary or capricious or characterized by an abuse of discretion or clearly unwarranted exercise of such discretion; or
> (E) Unsupported by evidence which is both substantial and material in light of the entire record."

The court further noted that in the judicial review proceedings "the findings of the

_____

[1] Examples of the inserts consist of ads for Columbia House Video Club, BMG Music Service, Disney's The Lion King, etc.

-3-

Board of Review as to the facts, if there be any evidence to support same, shall be conclusive and the jurisdiction of said court shall be confined to questions of law." Citing *Perryman v. Bible*, 653 S.W.2d 424, 429 (Tenn. Ct. App. 1983). The Court held there was insufficient evidence to support plaintiff's claims that Whittlesey and the hearing officer made misrepresentations, or that plaintiff was discharged due to his religious beliefs. The Court found there was the requisite evidence to support the Board's decision, and that there was no proof that the decision was arbitrary, capricious, or characterized by an abuse of discretion, and he affirmed the board's decision.

On appeal, plaintiff raises these issues for consideration:

1.      Whether the decision to deny unemployment benefits is supported by substantial and material evidence?

2.      Whether the procedure for claims and appeals violates plaintiff's right to trial by jury afforded under the Constitution?

3.      Whether the decision violates plaintiff's constitutional rights?

Judicial review of the Board's decision is required by Tenn. Code Ann. §50-7-304(I), which states that the trial court may only reverse or modify the decision if the rights of the petitioner have been prejudiced because the Board's decision is in violation of constitutional or statutory provisions; in excess of the agency's statutory authority; made upon unlawful procedure; arbitrary, capricious, or characterized by an abuse of discretion; or unsupported by evidence which is "both substantial and material." *See* Tenn. Code Ann. §50-7-304 (I)(2). The statute further provides that when "determining the substantiality of the evidence, the chancellor shall take into account whatever in the record fairly detracts from its weight, but the chancellor shall not substitute the chancellor's judgment for that of the board of review as to the weight of the evidence on questions of fact." *See* Tenn. Code Ann. §50-7-304 (I)(3).

The Appeals Tribunal and the Board found that plaintiff's was properly terminated for refusing to perform his job. The Chancellor held that there was sufficient evidence to support the decision by the Board. We conclude from our review of the record that this finding was proper. Plaintiff admitted there might be products/merchandise handled by the Company which he found objectionable, but stated that these were "minute." Mr. Whittlesey, on the other hand, stated that the Company carried numerous items that were objectionable in the same way that plaintiff found the advertising inserts to be objectionable, and that plaintiff had never before complained. Plaintiff admitted that this was his first complaint of this type, and Whittlesey also testified that these advertising inserts were handled throughout the plant, and were constantly found scattered about in many areas, and that it would have been nearly impossible for plaintiff to have never before encountered these items. There is substantial and material evidence to support the Board's decision, and the Chancellor properly refused to re-weigh the evidence on these factual issues. *See* Tenn. Code Ann. §50-7-304(I)(3).

The Board found that the plaintiff was fired for refusing to do his job, which it found

-4-

to be misconduct pursuant to Tenn. Code Ann. §50-7-303(a)(2). This disqualified plaintiff for unemployment compensation under the statute. Misconduct has been defined as "a material breach of some duty which the employee owes to the employer." *Cherry v. Suburban Mfg. Co.*, 745 S.W.2d 273, 275 (Tenn. 1988). There can be no question that refusing to perform the duties of one's job would be a breach of a duty owed to the employer by the employee. *Russell v. Culpepper*, 1997 WL 129110 (Tenn. Ct. App. March 21, 1997). Plaintiff admits that he refused to do what he was asked to do, and that he told his employer he would only be willing to work in an area that did not deal with the advertising inserts in any way. Mr. Whittlesey testified that this would be virtually impossible, because these materials were handled in every part of the plant. Thus, there was clearly substantial and material evidence to support the Board's decision for discharging plaintiff. Judicial review of an issue of this type has been compared to that of a jury verdict, such that if "reasonable minds could differ as to the cause of the unemployment, then the decision of the Board is final." *See Bailey v. Tennessee Dept. of Employment Sec.*, 370 S.W.2d 492, 495 (Tenn. 1963).

The Board's action was not arbitrary, capricious, or characterized by an abuse of discretion. *See State ex rel. Nixon v. McCanless*, 141 S.W.2d 885 (Tenn. 1940). The Board's action was reasonable, and was supported by the evidence.

Another issue raised by the plaintiff is that his constitutional rights were violated.[2] Plaintiff claims he was treated unfairly by his employer because of his religious beliefs. As we have noted, however, the Board found that plaintiff was fired because he refused to do his job, which is supported by the evidence in the record before us.

Plaintiff appears to also be claiming that the Board's decision was unfair because it violated his constitutional right to the free exercise of his religion. The U.S. Supreme Court has held, however, the adoption/application of a "neutral, generally applicable law" does not violate the Free Exercise Clause, regardless of its effect on religious exercise. *Cottonwood Christian Center, v. Cypress Redevelopment Agency*, 218 F. Supp.2d 1203 (C.D. Cal. 2002), citing *Employment Div., Dep't of Human Resources of Oregon v. Smith*, 110 S. Ct. 1595 (1990). Similarly, this Court has held that the enforcement of a "facially neutral and uniformly applicable" law which incidentally burdens a religious practice is valid. *See State ex rel. Commissioner of Transportation v. Medicine Bird Black Bear White Eagle*, 63 S.W.3d 734 (Tenn. Ct. App. 2001).

In this case, the Board correctly applied the applicable law to plaintiff's claim. The unemployment compensation law is facially neutral and uniformly and generally applied, and plaintiff has not claimed otherwise. We find no merit in plaintiff's argument regarding constitutional violations.

---

[2]Appellee correctly points out that plaintiff's petition does not "distinctly state" (*See* Tenn. Code Ann. § 50-7-304(i)(1) and (4)) that plaintiff is seeking review based on a violation of his constitutional rights, but a fair reading of the petition certainly implies same - plaintiff is given some deference in this regard due to his *pro se* status.

Finally, plaintiff argues in his brief that the statutory procedure for unemployment claims violates his constitutional right to a trial by jury, but plaintiff did not raise this issue at the trial court level, and it will not be entertained on appeal. *Wiltcher v. Bradley*, 708 S.W.2d 407 (Tenn. Ct. App. 1985).

The decision of the Board was supported by substantial and material evidence, as the Trial Court properly found, and we affirm the decision of the Trial Court and remand the matter with the cost of the appeal assessed to Randall C. Hagy.

_____
HERSCHEL PICKENS FRANKS, P.J., E.S.